ORIGINAL

FILED
JUN 3 2008
U.S. COURT OF FEDERAL CLAIMS

**UNITED STATES COURT OF FEDERAL CLAIMS**

**Bid Protest**

**RHINOCORPS LTD. CO.,**

**Plaintiff,**

No. 08-410 C

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiff RhinoCorps Ltd. Co., by and through its counsel of record, brings this bid protest action against Defendant The United States of America seeking declaratory judgment and injunctive relief.

**JURISDICTION**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(b).

**PARTIES**

2. Plaintiff is RhinoCorps Ltd. Co. (RhinoCorps), a New Mexico corporation with its principal place of business in Albuquerque, New Mexico. RhinoCorps is a small business.

3. Defendant is the United States of America, acting by and through the Department of the Air Force (hereinafter referred to as the "Air Force").

**GENERAL ALLEGATIONS**

**A. ARSS Contract**

4. On 29 May 2003, as a result of a competitive small business set-aside competition, RhinoCorps was awarded Contract No. F29601-03-C-0203 by the Air Force

Nuclear Weapons Counterproliferation Agency (AFNWCA), now known as the Air Force Nuclear Weapons Center, 709th Armament Systems Squadron (ARSS). RhinoCorps had the highest rated technical proposal and submitted the lowest price proposal. The Contract has a ceiling of $17,433,525. Effective 30 May 2003, this contract called for a two year basic effort period followed by three one year option periods. The contract expired on 29 May 2008. Hereafter this contract shall be referred to as the "ARSS Contract".

5. Under the ARSS Contract, RhinoCorps has provided to ARSS "all labor, supplies, hardware, materials, travel, facilities [and] other direct costs reasonably required to accomplish technical and programmatic support pursuant to the requirements contained in the Statement of Work entitled 'AF Nuclear Weapons and Counterproliferation Agency (NWCA) Support'...dated 25 November 2002."

6. The ARSS Contract is administered for ARSS by the Air Force Research Laboratory (AFRL). The contract contains a broad Statement of Work. One of RhinoCorps' subcontractors on the contract is ITT-Advanced Engineering & Sciences (ITT-AES).

7. The ARSS Contract incorporates by reference FAR 52.219-06, Notice of Total Small Business Set-Aside (JUL 1996). This clause states, *inter alia*, that any award resulting from the solicitation for the contract will be made to a small business concern.

8. The ARSS Contract incorporates by reference FAR 52.219-08, Utilization of Small Business Concerns (OCT 2000). The provision states, *inter alia*, that it is the policy of the United States that small business concerns shall have the maximum practicable opportunity to participate in performing contracts let by any Federal agency.

9. The ARSS Contract provides in Section H014(a) as follows: "This contract represents a continuing need of the Government, and as such, it is anticipated that, upon

completion or termination of this contract, another contract for substantially the same effort will be executed."

10. At the time of the award of the ARSS Contract to RhinoCorps, this same requirement has been satisfied by a small business set-aside program for over 20 years.

### B. DTRIAC Contract

11. Contract No. DTRA01-03-D-0022 is administered by the Defense Threat Reduction Agency (DTRA). Hereinafter, this contract shall be referred to as the "DTRIAC Contract". The DTRIAC Contract was competed pursuant to an open solicitation and was awarded in or prior to 2003 for a term of at least ten years expiring in 2013.

12. The prime contractor performing the DTRIAC Contract is ITT-AES. ITT–AES is an other-than-small business.

13. On or about 21 December 2004, DTRA issued to ITT-AES under the DTRIAC Contract, Delivery Order No. 00220024. This order required ITT-AES to provide "[n]on-personal services in support of the Defense Threat Reduction Information Analysis Center (DTRIAC) in accordance with the Statement of Objective...entitled 'AFNMCA CBRNE and Nuclear Weapons Support' dated 14 October 2004." This statement of work is substantially the same as the statement of work for the ARSS Contract.

### C. Air Force Decision Not to Solicit Follow-On Contract to ARSS Contract

14. As the end of the term of the ARSS Contract approached, RhinoCorps anticipated that the requirement would be competed by the Air Force once again as a small business set-aside.

15. On 19 November 2007, RhinoCorps briefed the Air Force on RhinoCorps, its team and its performance of the ARSS Contract. During this meeting, RhinoCorps inquired as to

the status of the follow-on procurement. The Air Force responded that a decision was imminent and that RhinoCorps would be advised when procurement notification would be expected. At no time during this meeting did the Air Force indicate that either its requirements with respect to the ARSS Contract or the ARSS mission had changed.

16. On 24 January 2008, an announcement from the Contracting Officer for the ARSS Contract appeared in a commercial procurement tracking service, INPUT Federal Technology Opportunities. This announcement stated that the requirements of the contract would not be recompeted as they are "being fulfilled through an ongoing, current contract out of another Contracting Office." RhinoCorps sought verification that this announcement was correct from ARSS and the AFRL.

17. On 28 January 2008, having received inadequate information from ARSS and the AFRL concerning the solicitation of a follow-up contract to the ARSS Contract, RhinoCorps submitted a Freedom of Information Act request to the FOIA office for Kirtland Air Force Base requesting information concerning any decision by the Air Force not to re-compete the requirements being addressed by the ARSS Contract.

18. On 13 February 2008, RhinoCorps withdrew its FOIA request at the request of the Air Force.

19. On 22 February 2008, representatives of RhinoCorps and the Air Force met to discuss solicitation of a follow-on to the ARSS Contract. The Air Force indicated that such a solicitation was deemed to be too costly and that RhinoCorps' own costs were too high. No cost analysis was provided by the Air Force to RhinoCorps. The Air Force stated that it was not unhappy with RhinoCorps' performance, however it also stated it was not required to maintain the work that is the subject of the ARSS Contract as a small business set-aside. The Air Force

further indicated that no decision had been made as to how it would proceed with respect to solicitation of a follow-on to the ARSS Contract. The Air Force also stated there was no procurement file yet in existence concerning this matter and reiterated that this was the reason it asked RhinoCorps to withdraw its FOIA request. The Air Force acknowledged it had other contract vehicles available to address its requirements. At no time during the meeting did the Air Force state that the ARSS requirements or mission had changed.

20. By letter dated 10 March 2008, RhinoCorps submitted a FOIA request to DTRA requesting a copy of the DTRIAC Contract and all modifications to date.

21. On 19 March 2008, another meeting was held between representatives of RhinoCorps and representatives of the Air Force. At this meeting, RhinoCorps attempted to ascertain what ARSS intended to do with respect to resolicitation of the ARSS Contract requirements. RhinoCorps asserted that, under the circumstances, the Air Force is legally obligated to continue the small business set-aside program represented by the ARSS Contract and that the Air Force should solicit a follow-on contract. In support of this contention, RhinoCorps presented the Air Force with legal authority supporting its argument. The Air Force then responded to this legal authority by maintaining for the first time that the ARSS requirements had changed.

22. Although not confirmed by the Air Force, RhinoCorps became aware of information during this time period indicating that the Air Force may intend to satisfy the requirements addressed by RhinoCorps pursuant to the ARSS Contract under the DTRIAC Contract.

### D. RhinoCorps Objections to Air Force Decision

23. RhinoCorps communicated to the Air Force its objections to the Air Force's decision not to solicit a follow-on contract to the ARSS Contract.

24. On behalf of RhinoCorps, inquires were made to the Air Force concerning this decision by U. S. Representatives Heather Wilson and Steve Pearce.

25. By letter dated 19 March 2008 from Rep. Heather Wilson to Secretary of the Air Force Michael Wynne, Rep. Wilson made inquiry as to, *inter alia*, why the work ordered under the ARSS Contract was moved to a large business and whether the ARSS Contract could be extended to allow for issuance of an RFP for a follow-on contract.

26. The Air Force responded to Rep. Wilson's letter with a letter dated 17 April 2008 from Major General Herbert J. Carlisle. In this letter the Air Force advised, *inter alia*, as follows:

(a) A follow-on request for proposals for the services RhinoCorps is currently providing under the ARSS Contract will not be issued.

(b) Due to a series of reorganizations within the Air Force and the recent standup of the Air Force Nuclear Weapons Center (AFNWC) at Kirtland Air Force Base, the AFNWCA became ARSS. These reorganizations eliminated redundant activities and provided an opportunity for sharing of existing government resources. As a result, the services that RhinoCorps currently provides are no longer needed.

(c) The support provided by RhinoCorps will in the future be provided by government personnel and existing AFNWC contracts.

(d) In addition, ARSS requirements changed so that its scientific and technical requirements now require highly skilled, technical expertise across a broad spectrum only on an as-needed basis.

(e) The Government plans to conduct market research for these new requirements by issuing a Sources Sought Synopsis to identify potential sources capable of meeting the new ARSS scientific and technical requirements.

(f) RhinoCorps is encouraged to respond to the Sources Sought Synopsis if the company determines it has the ability to meet the new requirements.

(g) The Sources Sought Synopsis will be issued no later than 30 April 2008.

27. By letter dated 22 April 2008 from Rep. Wilson to Secretary Wynne, Rep. Wilson made a follow-up inquiry as to, *inter alia*, what redundant activities have been eliminated and if certain activities are being eliminated, why a small business who has successfully met the needs of the Air Force is not being considered to provide that support. Rep. Wilson also inquired as to how the existence of redundant activities aligns with the posting of a sources sought synopsis.

28. On 6 May 2008, the Air Force posted a Sources Sought Synopsis. Responses to this synopsis are due on 4 June 2008. RhinoCorps intends to submit a response.

29. By letter dated 9 May 2008 from Colonel Randolph P. Miller, the Air Force responded to Representative Wilson's follow-up inquiry. In this letter, the Air Force stated, *inter alia*, as follows:

(a) The Air Force intends to conduct further market research through the issuance of a Sources Sought Synopsis to make sure small businesses are afforded an opportunity to compete to fill the needs of ARSS.

(b) The Air Force did consider the possibility of extending the ARSS Contract. However, it concluded the contract no longer meets the needs of ARSS.

(c) The Sources Sought Synopsis posted 6 May 2008 provides information regarding the current needs of ARSS.

(d) An Air Force reorganization rendered redundant some of the support provided by RhinoCorps under the ARSS Contract.

(e) The Sources Sought Synopsis was issued to address the remaining requirements of the ARSS.

**E. RhinoCorps Requests for Extension of ARSS Contract**

30. Based the Air Forces responses to the congressional inquiries, it appears the Air Force may still solicit a small business set-aside contract that will encompass some or all of the requirements of the ARSS Contract. However, due to Air Force delays, this contract is not presently ready to be performed.

31. RhinoCorps requested that the Air Force extend the terms of the ARSS Contract until the new contract is ready to commence performance. By e-mail memo dated 16 May 2008, the Contracting Officer for the ARSS Contract, Shirley D. Lindom, denied this request.

32. By letter dated 23 May 2008 to the Contracting Officer, counsel for RhinoCorps advised, *inter alia*, as follows:

(a) RhinoCorps understands that the Air Force has been directing work within the scope of the ARSS Contract to the DTRIAC Contract and that after the ARSS Contract expires, the Air Force will use the DTRIAC Contract to satisfy its requirements for the work previously provided by RhinoCorps.

(b) RhinoCorps objects to these diversions as improper transfers of work from a small business set-aside program to a contract being performed by an other-than small business.

(c) A solicitation of a small business set-aside contract as a follow-on to the ARSS Contract will be a lengthy process and it is possible a new contract will not be in place for another year.

(d) Under the circumstances, the ARSS Contract should be extended by the Air Force until a new contract is in place.

The letter then concluded by renewing RhinoCorps' request for an extension of the ARSS Contract.

33. The Contracting Officer responded to counsel's letter with her letter dated 27 May 2008. In this letter, the Contracting Officer stated, *inter alia*, as follows:

(a) The Air Force position on this issue is fully set forth in the Air Force's responses to Rep. Wilson's inquiries dated 17 April 2008 and 9 May 2008.

(b) The Contracting Officer is not aware of "any specific item of work" being performed by RhinoCorps under the ARSS Contract that is being reassigned to ITT-AES.

(c) "Work similar in nature to some of the work performed by [RhinoCorps for ARSS] will continue to be performed under a DTRA contract, as has been the case for many years. We believe [RhinoCorps] has been fully aware of this situation throughout the life of the RhinoCorps contract and knows that their contract has never been a requirements contract entitling them to all work of this nature."

(d) If RhinoCorps is aware of some specific item of work currently being performed by RhinoCorps employees that will not be completed by the end of RhinoCorps' contract, RhinoCorps should let her know.

(e) ARSS is in the process of planning its long term requirements.

(f) A sources sought synopsis has been issued. No final decision on how best to fill those needs has yet been made nor will be made until after responses to the sources sought synopsis have been analyzed.

(g) There is no basis to award RhinoCorps what would amount to a sole source contract for further services and there are no plans to extend the ARSS Contract.

34. Contrary to what is asserted in the Contracting Officer's letter of 27 May 2008, RhinoCorps had not been aware until receipt of her letter that work similar in nature to some of work it has performed under the ARSS Contract has been performed under a DTRA contract. This was the first time the Air Force confirmed that certain work within the scope of the ARSS Contract had been or will be performed under the DTRIAC Contract. In her letter, the Contracting Officer also inquired of as to specific items of work performed by RhinoCorps employees that will not be completed by the end of the contract. As the ARSS Contract is a support contract, RhinoCorps' tasks have been ongoing.

35. RhinoCorps intends to submit a proposal in response to any solicitation for a follow-on to the ARSS Contract.

36. On 28 May 2008, the Air Force produced certain documents to RhinoCorps responsive to RhinoCorps' FOIA request of 10 March 2008. This was an interim response and additional documents may yet be produced.

### F. Air Force Decision Not to Solicit Follow-on Contract to ARSS Contract is Contrary to Law

37. The decision by the Air Force not to solicit a follow-on small business set-aside contract to the ARSS Contract is contrary to law for several reasons, including the following:

(a) RhinoCorps' performance of the ARSS Contract over the past five years has been outstanding.

(b) RhinoCorps' prices for performing the ARSS Contract has always been reasonable and no more than fair market prices.

(c) There are no requirements under the ARSS Contract that RhinoCorps cannot provide.

(d) The ARSS Contract states that the contract represents a continuing need of the Government and it is anticipated that upon completion the contract, another contract for substantially the same effort will be executed.

(e) At the time of award of the ARSS Contract to RhinoCorps, this same requirement had been satisfied by a small business set-aside program for over 20 years.

(f) The statement of work for the ARSS Contract is broad enough to include any new requirements of the Air Force within the scope of the mission of the ARSS.

(g) The ARSS mission has not changed.

(h) The requirements of the Air Force set forth in the Sources Sought Synopsis do not differ in any material way from the requirements of the ARSS Contract. There is nothing in the synopsis to indicate that the ARSS mission has changed, any additional expertise is necessary or that the Air Force requirements cannot be satisfied by a follow-on to the ARSS Contract.

(i) FAR 19.502-2(b) provides in pertinent part that the contracting officer shall set-aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that offers will be obtained from at least two responsible small business concerns and award will be made at fair market prices. The Air Force did not engage in the analysis required by FAR 19.502-2(b) in deciding not to solicit a follow-on contract to the ARSS Contract.

(j) On information and belief, the Air Force did not advise the SBA that the requirements of the ARSS Contract would not be competed or that these requirements would be removed from the small business set-aside program.

(k) The DTRIAC Contract is being performed by ITT-AES, an other-than-small business.

38. The decision of the Air Force not to solicit a small business set-aside contract as a follow-on to the ARSS Contract because requirements have changed and that there is no need for a follow-on contract is a pretext and a *post hoc* rationalization. This decision is actually the result of the following:

(a) Due to organizational difficulties, the Air Force failed to timely initiate the process for soliciting a follow-on contract to the ARSS Contract.

(b) On information and belief, the Air Force was advised by ITT-AES that it is not necessary for the Air Force to solicit a follow-on contract because the requirements being satisfied under the ARSS Contract could be performed under the DTRIAC Contract. Also on information and belief, ITT-AES further advised the Air Force that ITT-AES can perform the services to be provided under a follow-on contract more cheaply than a small business.

39. RhinoCorps further believes the Air Force decision is pretextual and a *post hoc* rationalization for the following reasons:

(a) The Air Force did not argue that the ARSS requirements or mission had changed until after RhinoCorps presented the Air Force with legal authority concerning its obligation to maintain the small business set-aside program represented by the ARSS Contract.

(b) Despite several requests by RhinoCorps, the Air Force has not identified the new requirements that have motivated its decision not to solicit a follow-on contract to the ARSS Contract.

(c) Despite several requests by RhinoCorps, the Air Force did not provide any statements of work for task orders to be issued under the DTRIAC Contract in lieu of a follow-on to the ARSS Contract until it responded to RhinoCorps' FOIA request on 28 May 2008.

**RHINOCORPS ENTITLED TO RELIEF**

40. The decision of the Air Force not to solicit a small business set-aside follow-on contract to the ARSS Contract should be reversed as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law or without observance of procedure required by law.

41. If it is possible the Air Force will solicit a small business set-aside contract that will address some or all of the requirements addressed under the ARSS Contract, then its decision not to extend the term of the ARSS Contract until this new contract is ready to commence performance should also be reversed as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law or without observance of procedure required by law.

42. RhinoCorps is entitled to declaratory and injunctive relief reversing the decisions of the Air Force not to solicit a follow-on contract to the ARSS Contract and not to extend the term of the ARSS Contract until a new contract is ready to commence performance and

remedying the effects of these decisions. RhinoCorps is further entitled to certain other related relief.

43. RhinoCorps provided pre-filing notification of this bid protest to the Court of Federal Claims, the Department of Justice and the Contracting Officer by letter dated 28 May 2008.

## RELIEF REQUESTED

Plaintiff RhinoCorps Ltd. Co. respectfully requests the Court to grant the following relief:

1. A judgment declaring that the Air Force must solicit a small business set-aside contract as a follow-on to the ARSS Contract. Alternatively, a judgment declaring that the Air Force is required to perform the analysis set forth in FAR 19.502-2(b) before determining whether it is appropriate to solicit a small business set-aside contract as a follow-on to the ARSS Contract.

2. A judgment declaring that the Air Force cannot order work within the scope of the ARSS Contract under the DTRIAC Contract, or any other contract.

3. A temporary restraining order and preliminary injunction prohibiting the Air Force from ordering work within the scope of the ARSS Contract under the DTRIAC Contract, or any other contract.

4. A temporary restraining order and preliminary injunction requiring the Air Force to extend the term of the ARSS Contract until a new small business set-aside contract addressing the same requirement is ready to be performed, or alternatively, the Air Force decides in accordance with FAR 19.502-2(b) that this requirement can no longer be satisfied by a small business set-aside contract.

5. A permanent injunction requiring the Air Force to solicit a small business set-aside contract as a follow-on to the ARSS Contract. Alternatively, a permanent injunction requiring the Air Force to perform the analysis set forth in FAR 19.502-2(b) before determining whether it is appropriate to solicit a small business set-aside contract as a follow-on to the ARSS Contract.

6. A permanent injunction prohibiting the Air Force from ordering work within the scope of the ARSS Contract under the DTRIAC Contract, or any other contract.

7. A permanent injunction requiring the Air Force to extend the term of the ARSS Contract until a new small business set-aside contract addressing the same requirement is ready to be performed, or alternatively, the Air Force decides in accordance with FAR 19.502-2(b) that this requirement can no longer be satisfied by a small business set-aside contract.

8. An award to RhinoCorps of the cost of filing and prosecuting this protest, including attorneys fees.

9. Such other relief as the Court may deem just and proper.

LEWIS AND ROCA LLP

By [signature]

Ross L. Crown
Attorneys for Plaintiff RhinoCorps Ltd. Co.
201 Third Street NW, Suite 1950
P. O. Box 1027
Albuquerque, New Mexico 87103-1027
Telephone: (505) 764-5402
Facsimile: (505) 764-5463