ORIGINAL

FILED
JUN 3 2008
U.S. COURT OF
FEDERAL CLAIMS

UNITED STATES COURT OF FEDERAL CLAIMS

Bid Protest

RHINOCORPS LTD. CO.,

Plaintiff,

No. 08-410 C

v.

THE UNITED STATES OF AMERICA,

Defendant.

# APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I. RHINOCORPS IS ENTITLED TO TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ..... 1

A. Reasonable Likelihood of Success on the Merits ..... 2

1. ARSS Contract ..... 3

2. DTRIAC Contract ..... 4

3. Air Force Decision Not to Solicit Follow-on Contract to ARSS Contract ..... 5

4. RhinoCorps Objections to Air Force Decision ..... 7

5. RhinoCorps Requests for Extension of ARSS Contract ..... 9

6. Air Force Decision Not to Solicit Follow-on Contract to ARSS Contract is Contrary to Law ..... 11

7. RhinoCorps Entitled to Relief ..... 14

B. Irreparable Harm ..... 20

C. Balance of Hardships ..... 20

D. The Public Interest ..... 21

II. STATEMENT REGARDING DELIVERY OF COPIES ..... 21

III. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

## Cases

*Bannum, Inc. vs. United States*, 56 Fed. Cl. 453 (2003) .......... 2

*CACI, Inc. - Federal vs. United States*, 719 F.2d 1567 (Fed. Cir. 1983) .......... 2

*Consolidated Engineering Services, Inc. vs. United States and LB&B Associates, Inc.*, 64 Fed. Cl. 617 (2005) .......... 15

*C.W. Government Travel Inc. vs. United States*, 61 Fed. Cl. 559 (2004) .......... 20, 21

*FMC Corp. vs. United States*, 3 F.3d 424 (Fed. Cir. 1993) .......... 2

*Heritage of America, LLC, v. United States and Dynamic Systems Technology, Inc. and Evolver, Inc.*, 77 Fed. Cl. 66 (2007) .......... 15, 20

*Hospital Klean of Texas, Inc., v. United States and Integrity and Management Services, Inc.*, 65 Fed. Cl. 618 (2005) .......... 2

*Impresa Construuzioni Geom. Domenico Garufi vs. United States*, 238 F.3d 1324 (Fed. Cir. 2001) .......... 15

*Overstreet Elec. Co. vs. United States*, 47 Fed. Cl. 728 (2000) .......... 20

*PGBA, LLC vs. United States*, 389 F.3d 1219 (Fed. Cir. 2004) .......... 2

*PHT Supply Corporation vs. United States and Airtronic Services, Inc.*, 71 Fed. Cl. 1 (2006) .......... 15

*Reilly's Wholesale Produce vs. United States and Four Seasons Produce, Inc.*, 73 Fed. Cl. 705 (2006) .......... 2, 21

*Transatlantic Lines, LLC vs. United States and Strong Vessel Operators, LLC*, 68 Fed. Cl. 48, (2005) .......... 2, 20, 21

*United International Int'l Investigative Servs., Inc. vs. United States*, 41 Fed. Cl. 312 (1998) .......... 2

*Young-Robinson Associates Inc. vs. United States*, 760 F.Supp. 212 (D.D.C. 1991) .......... 16

## Comptroller General Decisions

*Ann Riley & Associates, Ltd.*, B-245149, 91-2 CPD ¶ 544 (December 16, 1991) ........................ 15

*Computers Universal, Inc*, B-296536, 2005 U. S. Comp. Gen. LEXIS (August 18, 2005)......... 16

*LBM, Inc.*, B-290682, 2002 CPD ¶ 157 (September 18, 2002) ................................................ 17

*N&N Travel & Tours, Inc.*, B-285164.2, 2000 U. S. Comp. Gen. LEXIS 128 (August 31, 2000) ........................................................................................................................ 18

*Sigmatech, Inc.*, B-296401, 2005 U. S. Comp. Gen. LEXIS 140 (August 10, 2005)............ 18, 19

*Sunrise International Group, Inc.*, B-254875, 94-1 CPD ¶ 93 (January 25, 1994)...................... 16

## Statutes

5 U.S.C. § 706(2)(A)........................................................................................................ 14

5 U.S.C. § 706(2)(D)........................................................................................................ 14

15 U.S.C. § 631(j) ............................................................................................................ 14

15 U.S.C. § 632(o)(2) ........................................................................................................ 18

28 U.S.C. § 1491(d)(1) ........................................................................................................ 1

28 U.S.C. § 1491(d)(2) .................................................................................................... 1, 2

## Regulations

FAR 7.107(a) ...................................................................................................................... 19

FAR 10.001(c)(2)................................................................................................................ 20

FAR 19.202-1(e) ................................................................................................................ 20

FAR 19.502-2(a) ........................................................................................................... 15, 16

FAR 19.502-2(b)........................................................................................ 12, 13, 16, 17, 21

FAR 52.219-6 .............................................................................................................. 4, 15

FAR 52.219-8 .............................................................................................................. 4, 15

Plaintiff RhinoCorps Ltd. Co. (RhinoCorps) protests the attempt by the Department of the Air Force to discontinue a small business set-aside program and divert the work performed under that program to a contract being performed by an other-than-small-business. The Air Force has taken this action without conforming to the FAR requirements for determining whether work should be directed to a small business set-aside contract. After apparently reconsidering in part its decision not to evaluate whether a new small business set-aside contract should be issued, the Air Force also rejected RhinoCorps' request that its present contract be extended until a new contract is in place.

RhinoCorps seeks a temporary restraining order and preliminary injunction reversing these decisions and remedying the effects of these decisions. This application is submitted pursuant to Rule 65 of the Rules of the Court of Federal Claims and Appendix C, Section V of those rules.

## I. RHINOCORPS IS ENTITLED TO TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

RhinoCorps is entitled to the issuance of a temporary retraining order and preliminary injunction in this bid protest action. The United States Court of Federal Claims has jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. 28 USC § 1491(d)(1). The CFC also has broad discretion in ordering remedies in protest actions. To afford relief in a bid protest proceeding, the Court "may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 USC §

1491(d)(2). *See also PGBA, LLC vs. United States*, 389 F.3d 1219, 1224 (Fed. Cir. 2004) and *Bannum, Inc. vs. United States*, 56 Fed. Cl. 453, 460 (2003).

The CFC uses the same four part test to determine whether a temporary restraining order and a preliminary injunction are appropriate in a particular case. *Bannum, Inc. vs. United States*, 56 Fed. Cl. at 456, *supra*. To obtain a temporary restraining order or preliminary injunction in a bid protest action, the petitioner must show: (1) a reasonable likelihood of success on the merits; (2) that it will suffer irreparable harm if injunctive relief is not granted; (3) that the harm it would suffer outweighs the harm to the Government and to third parties; and (4) that granting the injunction serves the public interest. *Transatlantic Lines, LLC vs. United States and Strong Vessel Operators, LLC*, 68 Fed. Cl. 48, 56 (2005); *United International Int'l Investigative Servs., Inc. vs. United States*, 41 Fed. Cl. 312, 323 (1998). *See also Bannum, Inc. vs. United States*, 56 Fed. Cl. at 456, *supra*.

The weakness of the showing of one factor in support of injunctive relief may be overcome by the strength of others. *Hospital Klean of Texas, Inc. vs. United States and Integrity and Management Services*, Inc., 65 Fed. Cl. 618, 621 (2005). *See also FMC Corp. vs. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). Indeed, an adequate case for injunctive relief can be made where one of the four factors governing injunctive relief is not established. *Reilly's Wholesale Produce vs. United States and Four Seasons Produce, Inc.*, 73 Fed. Cl. 705 (2006) at footnote 16.

### A. Reasonable Likelihood of Success on the Merits

The first of the four showings that RhinoCorps is required to make is that it has a reasonable likelihood of success on the merits in this protest. To do so, a protestor must demonstrate that, but for the alleged error, there is a substantial chance it would have received an award. *Transatlantic Lines, LLC*, 68 Fed. Cl. at 56, *supra*; *CACI, Inc. – Fed. vs. United States*,

719 F.2d 1567, 1674-1575 (Fed. Cir. 1983). Here, RhinoCorps can show that the Air Force has improperly failed to solicit and award a follow-on contract to the ARSS Contract and that it is intends to divert work within the scope of the ARSS Contract another contract, most probably to the DTRIAC Contract being performed by an other-than-small business. If the Air Force had proceeded in accordance with law, the ARSS Contract would be replaced upon expiration with a follow-on contract. RhinoCorps would have been one of the bidders on the follow-on contract. Due to its capabilities and its performance of the ARSS Contract, RhinoCorps would have had an excellent chance of receiving the award of the follow-on contract. Under that scenario, RhinoCorps would also have avoided a disruption in its work as the follow-on contract would have commenced performance immediately upon expiration of the ARSS Contract.

The merits of RhinoCorps' protest are set forth in its complaint for declaratory judgment and injunctive relief. The documents supporting the complaint and this application are attached to the Affidavit of Anthony J.D. Contri filed herewith. As alleged in the complaint, the facts and legal conclusions upon which this protest is based are as follows:

1. ARSS Contract

On 29 May 2003, as a result of a competitive small business set-aside competition, RhinoCorps was awarded Contract No. F29601-03-C-0203 by the Air Force Nuclear Weapons Counterproliferation Agency (AFNWCA), now known as the Air Force Nuclear Weapons Center, 709th Armament Systems Squadron (ARSS). RhinoCorps had the highest rated technical proposal and submitted the lowest price proposal. The Contract has a ceiling of $17,433,525. Effective 30 May 2003, this contract called for a two year basic effort period followed by three one year option periods. The contract expired on 29 May 2008. Hereafter this contract shall be referred to as the "ARSS Contract".

Under the ARSS Contract, RhinoCorps has provided to ARSS "all labor, supplies, hardware, materials, travel, facilities [and] other direct costs reasonably required to accomplish technical and programmatic support pursuant to the requirements contained in the Statement of Work entitled 'AF Nuclear Weapons and Counterproliferation Agency (NWCA) Support'...dated 25 November 2002."

The ARSS Contract is administered for ARSS by the Air Force Research Laboratory (AFRL). The contract contains a broad Statement of Work. One of RhinoCorps' subcontractors on the contract is ITT-Advanced Engineering & Sciences (ITT-AES).

The ARSS Contract incorporates by reference FAR 52.219-06, Notice of Total Small Business Set-Aside (JUL 1996). This clause states, *inter alia*, that any award resulting from the solicitation for the contract will be made to a small business concern.

The ARSS Contract incorporates by reference FAR 52.219-08, Utilization of Small Business Concerns (OCT 2000). The provision states, *inter alia*, that it is the policy of the United States that small business concerns shall have the maximum practicable opportunity to participate in performing contracts let by any Federal agency.

The ARSS Contract provides in Section H014(a) as follows: "This contract represents a continuing need of the Government, and as such, it is anticipated that, upon completion or termination of this contract, another contract for substantially the same effort will be executed."

At the time of the award of the ARSS Contract to RhinoCorps, this same requirement has been satisfied by a small business set-aside program for over 20 years.

2. <u>DTRIAC Contract</u>

Contract No. DTRA01-03-D-0022 is administered by the Defense Threat Reduction Agency (DTRA). Hereinafter, this contract shall be referred to as the "DTRIAC Contract". The

DTRIAC Contract was competed pursuant to an open solicitation and was awarded in or prior to 2003 for a term of at least ten years expiring in 2013.

The prime contractor performing the DTRIAC Contract is ITT-AES. ITT-AES is an other-than-small business.

On or about 21 December 2004, DTRA issued to ITT-AES under the DTRIAC Contract, Delivery Order No. 00220024. This order required ITT-AES to provide "[n]on-personal services in support of the Defense Threat Reduction Information Analysis Center (DTRIAC) in accordance with the Statement of Objective...entitled 'AFNMCA CBRNE and Nuclear Weapons Support' dated 14 October 2004." This statement of work is substantially the same as the statement of work for the ARSS Contract.

### 3. Air Force Decision Not to Solicit Follow-On Contract to ARSS Contract

As the end of the term of the ARSS Contract approached, RhinoCorps anticipated that the requirement would be competed by the Air Force once again as a small business set-aside.

On 19 November 2007, RhinoCorps briefed the Air Force on RhinoCorps, its team and its performance of the ARSS Contract. During this meeting, RhinoCorps inquired as to the status of the follow-on procurement. The Air Force responded that a decision was imminent and that RhinoCorps would be advised when procurement notification would be expected. At no time during this meeting did the Air Force indicate that either its requirements with respect to the ARSS Contract or the ARSS mission had changed.

On 24 January 2008, an announcement from the Contracting Officer for the ARSS Contract appeared in a commercial procurement tracking service, INPUT Federal Technology Opportunities. This announcement stated that the requirements of the contract would not be recompeted as they are "being fulfilled through an ongoing, current contract out of another

Contracting Office." RhinoCorps sought verification that this announcement was correct from ARSS and the AFRL.

On 28 January 2008, having received inadequate information from ARSS and the AFRL concerning the solicitation of a follow-up contract to the ARSS Contract, RhinoCorps submitted a Freedom of Information Act request to the FOIA office for Kirtland Air Force Base requesting information concerning any decision by the Air Force not to re-compete the requirements being addressed by the ARSS Contract.

On 13 February 2008, RhinoCorps withdrew its FOIA request at the request of the Air Force.

On 22 February 2008, representatives of RhinoCorps and the Air Force met to discuss solicitation of a follow-on to the ARSS Contract. The Air Force indicated that such a solicitation was deemed to be too costly and that RhinoCorps' own costs were too high. No cost analysis was provided by the Air Force to RhinoCorps. The Air Force stated that it was not unhappy with RhinoCorps' performance, however it also stated it was not required to maintain the work that is the subject of the ARSS Contract as a small business set-aside. The Air Force further indicated that no decision had been made as to how it would proceed with respect to solicitation of a follow-on to the ARSS Contract. The Air Force also stated there was no procurement file yet in existence concerning this matter and reiterated that this was the reason it asked RhinoCorps to withdraw its FOIA request. The Air Force acknowledged it had other contract vehicles available to address its requirements. At no time during the meeting did the Air Force state that the ARSS requirements or mission had changed.

By letter dated 10 March 2008, RhinoCorps submitted a FOIA request to DTRA requesting a copy of the DTRIAC Contract and all modifications to date.

On 19 March 2008, another meeting was held between representatives of RhinoCorps and representatives of the Air Force. At this meeting, RhinoCorps attempted to ascertain what ARSS intended to do with respect to resolicitation of the ARSS Contract requirements. RhinoCorps asserted that, under the circumstances, the Air Force is legally obligated to continue the small business set-aside program represented by the ARSS Contract and that the Air Force should solicit a follow-on contract. In support of this contention, RhinoCorps presented the Air Force with legal authority supporting its argument. The Air Force then responded to this legal authority by maintaining for the first time that the ARSS requirements had changed.

Although not confirmed by the Air Force, RhinoCorps became aware of information during this time period indicating that the Air Force may intend to satisfy the requirements addressed by RhinoCorps pursuant to the ARSS Contract under the DTRIAC Contract.

4. RhinoCorps Objections to Air Force Decision

RhinoCorps communicated to the Air Force its objections to the Air Force's decision not to solicit a follow-on contract to the ARSS Contract.

On behalf of RhinoCorps, inquires were made to the Air Force concerning this decision by U. S. Representatives Heather Wilson and Steve Pearce.

By letter dated 19 March 2008 from Rep. Heather Wilson to Secretary of the Air Force Michael Wynne, Rep. Wilson made inquiry as to, *inter alia*, why the work ordered under the ARSS Contract was moved to a large business and whether the ARSS Contract could be extended to allow for issuance of an RFP for a follow-on contract.

The Air Force responded to Rep. Wilson's letter with a letter dated 17 April 2008 from Major General Herbert J. Carlisle. In this letter the Air Force advised, *inter alia*, as follows:

(a) A follow-on request for proposals for the services RhinoCorps is currently providing under the ARSS Contract will not be issued.

(b) Due to a series of reorganizations within the Air Force and the recent standup of the Air Force Nuclear Weapons Center (AFNWC) at Kirtland Air Force Base, the AFNWCA became ARSS. These reorganizations eliminated redundant activities and provided an opportunity for sharing of existing government resources. As a result, the services that RhinoCorps currently provides are no longer needed.

(c) The support provided by RhinoCorps will in the future be provided by government personnel and existing AFNWC contracts.

(d) In addition, ARSS requirements changed so that its scientific and technical requirements now require highly skilled, technical expertise across a broad spectrum only on an as-needed basis.

(e) The Government plans to conduct market research for these new requirements by issuing a Sources Sought Synopsis to identify potential sources capable of meeting the new ARSS scientific and technical requirements.

(f) RhinoCorps is encouraged to respond to the Sources Sought Synopsis if the company determines it has the ability to meet the new requirements.

(g) The Sources Sought Synopsis will be issued no later than 30 April 2008.

By letter dated 22 April 2008 from Rep. Wilson to Secretary Wynne, Rep. Wilson made a follow-up inquiry as to, *inter alia*, what redundant activities have been eliminated and if certain activities are being eliminated, why a small business who has successfully met the needs of the Air Force is not being considered to provide that support. Rep. Wilson also inquired as to how the existence of redundant activities aligns with the posting of a sources sought synopsis.

On 6 May 2008, the Air Force posted a Sources Sought Synopsis. Responses to this synopsis are due on 4 June 2008. RhinoCorps intends to submit a response.

By letter dated 9 May 2008 from Colonel Randolph P. Miller, the Air Force responded to Representative Wilson's follow-up inquiry. In this letter, the Air Force stated, *inter alia*, as follows:

(a) The Air Force intends to conduct further market research through the issuance of a Sources Sought Synopsis to make sure small businesses are afforded an opportunity to compete to fill the needs of ARSS.

(b) The Air Force did consider the possibility of extending the ARSS Contract. However, it concluded the contract no longer meets the needs of ARSS.

(c) The Sources Sought Synopsis posted 6 May 2008 provides information regarding the current needs of ARSS.

(d) An Air Force reorganization rendered redundant some of the support provided by RhinoCorps under the ARSS Contract.

(e) The Sources Sought Synopsis was issued to address the remaining requirements of the ARSS.

5. <u>RhinoCorps Requests for Extension of ARSS Contract</u>

Based the Air Force's responses to the congressional inquiries, it appears the Air Force may still solicit a small business set-aside contract that will encompass some or all of the requirements of the ARSS Contract. However, due to Air Force delays, this contract is not presently ready to be performed.

RhinoCorps requested that the Air Force extend the terms of the ARSS Contract until the new contract is ready to commence performance. By e-mail memo dated 16 May 2008, the Contracting Officer for the ARSS Contract, Shirley D. Lindom, denied this request.

By letter dated 23 May 2008 to the Contracting Officer, counsel for RhinoCorps advised, *inter alia*, as follows:

(a) RhinoCorps understands that the Air Force has been directing work within the scope of the ARSS Contract to the DTRIAC Contract and that after the ARSS Contract expires, the Air Force will use the DTRIAC Contract to satisfy its requirements for the work previously provided by RhinoCorps.

(b) RhinoCorps objects to these diversions as improper transfers of work from a small business set-aside program to a contract being performed by an other-than small business.

(c) A solicitation of a small business set-aside contract as a follow-on to the ARSS Contract will be a lengthy process and it is possible a new contract will not be in place for another year.

(d) Under the circumstances, the ARSS Contract should be extended by the Air Force until a new contract is in place.

The letter then concluded by renewing RhinoCorps' request for an extension of the ARSS Contract.

The Contracting Officer responded to counsel's letter with her letter dated 27 May 2008. In this letter, the Contracting Officer stated, *inter alia*, as follows:

(a) The Air Force position on this issue is fully set forth in the Air Force's responses to Rep. Wilson's inquiries dated 17 April 2008 and 9 May 2008.

(b) The Contracting Officer is not aware of "any specific item of work" being performed by RhinoCorps under the ARSS Contract that is being reassigned to ITT-AES.

(c) "Work similar in nature to some of the work performed by [RhinoCorps for ARSS] will continue to be performed under a DTRA contract, as has been the case for many years. We believe [RhinoCorps] has been fully aware of this situation throughout the life of the

RhinoCorps contract and knows that their contract has never been a requirements contract entitling them to all work of this nature."

(d) If RhinoCorps is aware of some specific item of work currently being performed by RhinoCorps employees that will not be completed by the end of RhinoCorps' contract, RhinoCorps should let her know.

(e) ARSS is in the process of planning its long term requirements.

(f) A sources sought synopsis has been issued. No final decision on how best to fill those needs has yet been made nor will be made until after responses to the sources sought synopsis have been analyzed.

(g) There is no basis to award RhinoCorps what would amount to a sole source contract for further services and there are no plans to extend the ARSS Contract.

Contrary to what is asserted in the Contracting Officer's letter of 27 May 2008, RhinoCorps had not been aware until receipt of her letter that work similar in nature to some of work it has performed under the ARSS Contract has been performed under a DTRA contract. This was the first time the Air Force confirmed that certain work within the scope of the ARSS Contract had been or will be performed under the DTRIAC Contract. In her letter, the Contracting Officer also inquired of as to specific items of work performed by RhinoCorps employees that will not be completed by the end of the contract. As the ARSS Contract is a support contract, RhinoCorps' tasks have been ongoing.

RhinoCorps intends to submit a proposal in response to any solicitation for a follow-on to the ARSS Contract.

6. <u>Air Force Decision Not to Solicit Follow-on Contract to ARSS Contract is Contrary to Law</u>

The decision by the Air Force not to solicit a follow-on small business set-aside contract to the ARSS Contract is contrary to law for several reasons, including the following:

(a) RhinoCorps' performance of the ARSS Contract over the past five years has been outstanding.

(b) RhinoCorps' prices for performing the ARSS Contract has always been reasonable and no more than fair market prices.

(c) There are no requirements under the ARSS Contract that RhinoCorps cannot provide.

(d) The ARSS Contract states that the contract represents a continuing need of the Government and it is anticipated that upon completion the contract, another contract for substantially the same effort will be executed.

(e) At the time of award of the ARSS Contract to RhinoCorps, this same requirement had been satisfied by a small business set-aside program for over 20 years.

(f) The statement of work for the ARSS Contract is broad enough to include any new requirements of the Air Force within the scope of the mission of the ARSS.

(g) The ARSS mission has not changed.

(h) The requirements of the Air Force set forth in the Sources Sought Synopsis do not differ in any material way from the requirements of the ARSS Contract. There is nothing in the synopsis to indicate that the ARSS mission has changed, any additional expertise is necessary or that the Air Force requirements cannot be satisfied by a follow-on to the ARSS Contract.

(i) FAR 19.502-2(b) provides in pertinent part that the contracting officer shall set-aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that offers will be obtained from at least two responsible small business concerns and award will be made at fair market prices. The Air Force did not engage in the

analysis required by FAR 19.502-2(b) in deciding not to solicit a follow-on contract to the ARSS Contract.

(j) On information and belief, the Air Force did not advise the SBA that the requirements of the ARSS Contract would not be competed or that these requirements would be removed from the small business set-aside program.

(k) The DTRIAC Contract is being performed by ITT-AES, an other-than-small business.

The decision of the Air Force not to solicit a small business set-aside contract as a follow-on to the ARSS Contract because requirements have changed and that there is no need for a follow-on contract is a pretext and a *post hoc* rationalization. This decision is actually the result of the following:

(a) Due to organizational difficulties, the Air Force failed to timely initiate the process for soliciting a follow-on contract to the ARSS Contract.

(b) On information and belief, the Air Force was advised by ITT-AES that it is not necessary for the Air Force to solicit a follow-on contract because the requirements being satisfied under the ARSS Contract could be performed under the DTRIAC Contract. Also on information and belief, ITT-AES further advised the Air Force that ITT-AES can perform the services to be provided under a follow-on contract more cheaply than a small business.

RhinoCorps further believes the Air Force decision is pretextual and a *post hoc* rationalization for the following reasons:

(a) The Air Force did not argue that the ARSS requirements or mission had changed until after RhinoCorps presented the Air Force with legal authority concerning its obligation to maintain the small business set-aside program represented by the ARSS Contract.

(b) Despite several requests by RhinoCorps, the Air Force has not identified the new requirements that have motivated its decision not to solicit a follow-on contract to the ARSS Contract.

(c) Despite several requests by RhinoCorps, the Air Force did not provide any statements of work for task orders to be issued under the DTRIAC Contract in lieu of a follow-on to the ARSS Contract until it responded to RhinoCorps' FOIA request on 28 May 2008.

7. RhinoCorps Entitled to Relief

The decision of the Air Force not to solicit a small business set-aside follow-on contract to the ARSS Contract should be reversed as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law or without observance of procedure required by law.

If it is possible the Air Force will solicit a small business set-aside contract that will address some or all of the requirements addressed under the ARSS Contract, then its decision not to extend the term of the ARSS Contract until this new contract is ready to commence performance should also be reversed as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law or without observance of procedure required by law.

RhinoCorps is entitled to declaratory and injunctive relief reversing the decisions of the Air Force not to solicit a follow-on contract to the ARSS Contract and not to extend the term of the ARSS Contract until a new contract is ready to commence performance and remedying the effects of these decisions. RhinoCorps is further entitled to certain other related relief.

Pursuant to the Tucker Act, the Court of Federal Claims reviews challenged agency action under the Administrative Procedure Act (APA) standards set forth in 5 USC § 706. Under the APA standards, an agency action will be set aside if it is "arbitrary, capricious, an abuse of discretion, or other wise not in accordance with law" 5 USC Section 706(2)(A), or if it is "without observance of procedure required by law." *Id.* § 706(2)(D). In other words, a bid

award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Heritage of America, LLC vs. United States and Dynamic Systems Technology Inc.* and *Evolver, Inc.*, 77 Fed. Cl. 66, 70-71 (2007) citing *Impresa Construzioni Geom. Domenico Garufi vs. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). *See also PHT Supply Corporation vs. United States and Airtronic Services Inc.*, 71 Fed. Cl. 1, 11 (2006) and *Consolidated Engineering Services, Inc. vs. United States and LB & B Associates, Inc.* 64 Fed. Cl. 617, 622-923 (2005).

As noted above, the ARSS Contract incorporates FAR 52.219-6, Notice of Total Small Business Set-Aside, indicating that any award resulting from the solicitation shall be made to a small business concern. In addition, the ARSS Contract incorporates by reference FAR 52.219-8, Utilization of Small Business Concerns, which provides it is the policy of the United States that small business concerns shall have the maximum practicable opportunity to participate in performing contracts let by any Federal agency. Moreover, the ARSS Contract represents a continuing need of the Government, and as such, the contract states that upon completion or termination of the contract, another contract for substantially the same effort will be executed. ARSS Contract, Section H014(a).

FAR 19.502-2(b) requires that the contracting officer shall set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns and (2) award will be made at fair market prices. As a general rule, procurements must be set aside for small businesses where the contracting officer determines the factors required by FAR 19.502-2(a) exist. *Ann Riley & Associates, Ltd.*, B-245149, December 16, 1991, 91-2 CPD ¶ 544 at 5, 7. Deviation from this requirement requires special authorization from the head of the agency and his/her designee and a copy of the approved deviation must be furnished to the FAR Secretariat.

Once a product or service has been acquired successfully by a contracting office on the basis of a small business set-aside, all future requirements of that office or service not subject to simplified small business procedures shall, if required by agency regulations, be acquired on the basis of a repetitive set-aside. *Young-Robinson Associates Inc. vs. United States*, 760 F.Supp. 212, 214 (D.D.C. 1991). Where a service has been previously been successfully acquired under a small business set-aside, the set-aside should be continued unless the factors identified in FAR 19.502-2(a) no longer exists. *Sunrise International Group, Inc.*, B-254875, January 25, 1994, 94-1 CPD ¶ 93 at 7. To withdraw a set-aside, the contracting officer must take reasonable efforts to ascertain whether it was likely to receive sufficient bids from small businesses to justify a set-aside. *Id.*

Here, RhinoCorps provided to the Air Force all of the services it required under the ARSS Contract. Further, such services had been successfully delivered by RhinoCorps and its predecessor small business contractors for a period of over 20 years. With little explanation, the Air Force did not timely commence the solicitation process so that a follow-on contract to the ARSS Contract would be ready to commence when the existing contract expires on 29 May 2008. A non-competitive extension of a contract may be appropriately undertaken until a competitive procurement is resolved. *Computers Universal, Inc*, B-296536, August 18, 2005, 2005 U.S. Comp. Gen. LEXIS 144 at 6.

There is no evidence that either the mission or the requirements of ARSS have changed. There is also no evidence that the Air Force has undertaken an analysis under FAR 19.502-2(b).

Recently, the Air Force issued a survey of available sources to provide services similar to those delivered under the ARSS Contract. Meanwhile, when the ARSS Contract expires, the Air Force apparently intends to procure the services hereto for provided by RhinoCorps from an other-than-small business. These services are likely to be obtained from ITT-AES under the

DTRIAC Contract. This is an improper diversion of work from a small business set-aside program.

Unless and until the Air Force determines in accordance with FAR 19.502-2(b) that it is no longer appropriate to continue the small business set-aside program under which the ARSS Contract was issued, the Air Force is obligated to continue to satisfy its requirements under that program. Thus, the term of the ARSS Contract should be extended until a follow-on contract is ready to commence performance or the Air Force determines this small business set-aside program no longer conforms to two-part test set forth in FAR 19.502-2(b).

The circumstances of this action closely resemble the dispute in *LBM, Inc.*, B-290682, September 18, 2002, 2002 CPD ¶ 157. In that case, LBM, a small business concern, protested to the GAO the decision of the Army to acquire transportation motor pool services at Fort Polk under a large umbrella contract established by regionalization plan providing for multiple award, indefinite delivery, indefinite quantity task order contracts. LBM complained that these services, which were previously provided exclusively by small business concerns, should continue to be set-aside for small business competition. These services had been provided at Fort Polk by small businesses for the preceding 10 years.

Citing FAR 19.502-2(b) the GAO noted that contracting officers generally are required to set-aside for small business all acquisitions exceeding $100,000 if there is a reasonable expectation of receiving fair market price offers from at least two responsible small business concerns. As is the circumstance here, in *LBM* there was no evidence in the record that the agency considered whether these services should be set-aside for small business participation. By not considering the applicable law and regulations pertaining to small businesses, GAO found that the Army violated FAR 19.502-2(b). LBM's protest was sustained and GAO recommended

that the Army consider whether the transportation motor pool services at Fort Polk should be set aside exclusively for small business participation.

To the extent the Air Force may contend that the services that were previously the subject of the ARSS Contract can now be ordered under the DTRIAC Contract, the Air Force may be engaged in improper bundling. The Small Business Act defines bundling as consolidating two or more procurement requirements for good or services previously provided or performed under separate smaller contracts into a solicitation of offers for a single contract that is likely to be unsuitable for award to a small business concern. Due to the diversity, size or specialized nature of the performance required, the aggregate dollar value of the anticipated award, the geographical dispersion of the contract performance sites or any combination of these factors. 15 USC § 632(o)(2). *See also Sigmatech, Inc.*, B-296401, August 10, 2005, 2005 U.S. Comp. Gen. LEXIS 140 at 11-12.

This bundling presents issues similar to those raised in *N&N Travel & Tours, Inc.*, B-285164.2, August 31, 2000, 2000 U.S. Comp. Gen. LEXIS 128. In that proceeding, N&N, along with other travel agencies, jointly protested to the GAO a decision by the Air Force to request quotes for travel management services for Travis Air Force Base using a tailored task order request under a master contract awarded by the General Services Administration. N&N had been providing travel management services to Travis Air Force Base under a small business set-aside contract.

The GAO found the work that had previously been performed by small businesses at Travis was bundled into the significantly larger master contract covering all federal agencies in the State of California . This is contrary to the Small Business Act which states that "to the maximum extend practicable," agencies shall "avoid unnecessary and unjustified bundling of contract requirements that precludes small business participation in procurements as prime

contractors." 15 USC § 631(j). The GAO further noted that contracting officers are generally required to set-aside for small business all procurements exceeding $100,000 if there is a reasonable expectation of receiving fair market price offers from at least two responsible small business concerns. A contracting officer is expected to make reasonable efforts to ascertain whether it is likely that offers will be received from at least two small businesses capable of performing the work.

The record before the GAO indicated that there was substantial interest on the part of small businesses to provide travel management services to Travis AFB. Given this result, together with the lack of evidence that it was necessary to bundle travel services at Travis AFB with the entire federal workload in California, GAO found that a challenge to the underlining solicitation filed prior to the closing date for receipt of proposals would likely have resulted in a decision that this work should be procured separately and reserved for small business. Under these circumstances, GAO concluded that FAR 19.502-2 required that the purchase of these services for Travis AFB be conducted as a small business set-aside.

GAO recommended that the pending task order under the master contract be cancelled and that the Air Force procure travel management services at Travis AFB in compliance with FAR 19.502 as there was a reasonable expectation of receiving fair market price offers from at least two responsible small business concerns.

When a proposed acquisition involves bundled requirements, the agency must first conduct market research to determine whether the bundling is necessary and justified, given the potential impact on small business participation, by ascertaining whether the Government will derive substantial benefits from the bundling and quantifying these benefits. *Sigmatech, Inc.*, 2005 U.S. Comp. Gen. LEXIS 140 at 12, *supra,* citing FAR 7.107(a), (b). In addition, the agency must, at least 30 days before issuing a solicitation provide an acquisition package to the

SBA for review and provide a justifying statement. *Id.* citing FAR 19.202-1(e). Furthermore, within the same 30 days, an agency must notify any affected small business concerns of the Government's intention to bundle the requirement. *Id.* citing FAR 10.001(c)(2).

**B. Irreparable Harm**

The second showing a protestor must make to establish a right to a temporary restraining order and preliminary injunction is irreparable harm. The court considers whether a petitioner has an adequate remedy at law when deciding irreparable harm. *Transatlantic Lines, LLC* 68 Fed. Cl. at 57, *supra*; *Overstreet Elec. Co. vs. United States*, 47 Fed. Cl. 728, 743-744 (2000). A movant who clearly establishes a likelihood of success on the merits receives the benefit of a presumption of irreparable harm. *C.W. Government Travel Inc. vs. United States*, 61 Fed. Cl. 559, 577 (2004).

Here, RhinoCorps will suffer irreparable harm if the Air Force is permitted to proceeding without regard to the small business set-aside program. RhinoCorps is losing work that it otherwise would have the opportunity to compete for. Further, to the extent the Air Force delays the solicitation and award of a follow-on contract, RhinoCorps loses the opportunity to perform that work. This lost work results in lost revenues to RhinoCorps. Where, as here, a petitioner has no action against the United States for lost profits, the harm to the petitioner is irreparable and that harm satisfies the second criterion for injunctive relief. *Heritage of America, LLC*, 77 Fed. Cl. at 78, *supra*.

**C. Balance of Hardships**

In balancing the parties' hardships there is consideration of the harm that injunctive relief would impose on the Government. *Transatlantic Lines, LLC* 68 Fed. Cl. at 57 *supra*. Here, it is difficult to see how the Air Force could be harmed by an award of injunctive relief. The effect of the temporary restraining order and preliminary injunction sought by RhinoCorps would be for

the Air Force to continue obtaining services as it has in the past. Further, the Air Force is not in a position to demonstrate greater hardship than the protestor when the protest is at least in part a result of its own failure to properly plan a new procurement. *See Reilly's Wholesale Produce vs. United States and Four Seasons Produce Inc,* 73 Fed. Cl. at 716, *supra.*

**D. The Public Interest**

The final showing required for issuance of a temporary restraining order and preliminary injunction is that the granting of this relief serves the public interest. The public has a strong interest in ensuring that public officials treat contractors fairly and generally obey procurement laws and regulations. *Transatlantic Lines, LLC,* 68 Fed. Cl. at 57, *supra. C.W. Government Travel, Inc.* 61 Fed. Cl. at 577, *supra.* It is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations. *C.W. Government Travel* at 578.

In failing to solicit a follow-on contract to the ARSS Contract and by diverting work previously set-aside for small businesses to a contract being performed by an other-than-small business, the Air Force has engaged in actions that are arbitrary, capricious and an abuse of digression. This decision is also not in accordance with the law and is without observance of the procedure required by law in violating, at a minimum, FAR 19.502-2(b).

## II. STATEMENT REGARDING DELIVERY OF COPIES

Counsel for RhinoCorps is providing copies of the documents relating to this application by electronic means to counsel for the United States at the Department of Justice, Commercial Litigation Branch.

## III. CONCLUSION

For the reasons stated herein, protestor RhinoCorps Ltd. Co. respectfully requests the Court to award the following injunctive relief:

1. A temporary restraining order and preliminary injunction prohibiting the Air Force from ordering work within the scope of the ARSS Contract under the DTRIAC Contract, or any other contract.

2. A temporary restraining order and preliminary injunction requiring the Air Force to extend the term of the ARSS Contract until a new small business set-aside contract addressing the same requirement is ready to be performed, or alternatively, the Air Force decides in accordance with FAR 19.502-2(b) that this requirement can no longer be satisfied by a small business set-aside contract.

3. Such other relief as the Court may deem just and proper.

LEWIS AND ROCA LLP

By ____________________

Ross L. Crown
Attorneys for Plaintiff RhinoCorps Ltd. Co.
201 Third Street NW, Suite 1950
P. O. Box 1027
Albuquerque, New Mexico 87103-1027
Telephone: (505) 764-5402
Facsimile: (505) 764-5463