IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **RHINOCORPS LTD. CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 08-410C** |
| | ) | **(Senior Judge Hodges)** |
| **v.** | ) | |
| | ) | **BID PROTEST** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1), 12(b)(6) and 65 of the Rules of the Court of Federal Claims (RCFC), the United States respectfully requests that this Court dismiss the complaint for lack of jurisdiction and failure to state a claim upon which relief may be granted.

## ISSUES PRESENTED

1. Whether, with respect to Rhinocorps' protest concerning the Air Force's requirements analysis:
   a. Rhinocorps lacks standing.
   b. Rhinocorps protest is moot.
2. Whether, with respect to Rhinocorps' protest concerning the Defense Threat Reduction Information Analysis Center (DTRIAC) contract:
   a. Rhinocorps lacks standing to protest the DTRIAC contract.
   b. The Court possesses jurisdiction to entertain a protest of a delivery order pursuant to the contract.
   c. Rhinocorps has failed to state a claim concerning the DTRIAC contract upon which relief could be granted.
   d. The Court possesses the authority to grant Rhinocorps the relief it seeks

regarding the DTRIAC contract.

3. Whether Rhinocorps satisfies the standards for injunctive relief.

## STATEMENT OF THE CASE

### I. Nature Of The Case

This case arises out of a contract that expired on May 29, 2008 after all options were exercised and performed.

### II. Statement Of Facts

The facts pertinent to our motion to dismiss are not, for the purposes of our motion, in dispute.[1]

On or about May 29, 2003, Rhinocorps was awarded Contract F29601-03-C-0203 (the "Rhinocorps Contract") by the Air Force Nuclear Weapons Counterproliferation Agency (AFNWCA) to provide technical and programmatic support. The Rhinocorps contract was a small business set-aside contract that had a base performance period of two years followed by three option periods. All option periods were exercised and the contract expired on May 29, 2008 on its own terms. One of Rhinocorps' subcontractors was ITT-Advanced Engineering & Sciences (ITT-AES), an other-than-small business.

Also in 2003, the Defense Threat Reduction Agency (DTRA) awarded Contract DTRA01-03-D-0022 to ITT-AES to support the Defense Threat Reduction Information Analysis Center (DTRIAC) (the "DTRIAC Contract"). The DTRIAC Contract is an indefinite delivery/indefinite quantity delivery order contract. On or about December 21, 2004, DTRA

[1] For purposes of this motion only, we accept as true certain factual allegations set forth in the complaint. Should this motion be denied, we reserve the right to controvert certain allegations in the complaint.

issued a delivery order under the DTRIAC Contract, to support DTRIAC efforts, and to provide support to AFNWCA, similar to that which Rhinocorps and its subcontractors were providing under the Rhinocorps Contract, on an as needed basis.

In recent years, the Air Force has undergone substantial reorganization and the AFNWCA is now known as the 709th Armament Systems Squadron (ARSS) organized under the Air Force Nuclear Weapons Center (AFNWC). This reorganization presented an opportunity for the Air Force to increase efficiency by sharing existing Government resources and eliminating redundancy. In particular, the requirements for technical support shifted so that the 709th ARSS now needs highly skilled, technical expertise across a broad spectrum on an as-needed basis, similar to the support ITT-AES provides under the DTRIAC Contract, rather than the full- time support Rhinocorps performed under its contract. In addition, the Air Force determined that it now possessed the internal resources to perform some of the services Rhinocorps provided internally. Accordingly, the Air Force has determined that much of the service provided by Rhinocorps under the Rhinocorps Contract has become redundant and unnecessary.

Although it concluded that the former Rhinocorps contract did not meet the changing needs of ARSS, the Air Force is committed to affording small businesses the opportunity, where appropriate, to compete for future ARSS contracts. Accordingly, the Air Force has issued a sources sought synopsis, and currently is conducting market research to determine how to best meet its future contracting needs, and to what extent small businesses may be able to fill those needs. Pending the outcome of this internal assessment and market research, and any procurement efforts that would follow, the Air Force has determined that any interim requirements for technical and scientific support can be provided by ITT-AES, pursuant to the

DTRIAC contract, which had been the case throughout the life of the Rhinocorps contract.

## SUMMARY OF THE ARGUMENT

Although the complaint is comprised of a scatter-shot of grievances, Rhinocorps has failed to state a viable cause of action that falls within the narrowly prescribed jurisdiction of this Court. Rhinocorps' complaint essentially challenges two Air Force actions: 1) the Air Force's ongoing requirements analysis, which began prior to the expiration of the Rhinocorps contract; and 2) the Air Force's use of the DTRIAC contract to provide services similar to those that Rhinocorps provided pending the outcome of the requirements analysis, and any procurement that might follow. However, neither challenge presents a cause of action that falls within this Court's jurisdiction.

First, to the extent Rhinocorps protests the Air Force's requirements analysis, such a challenge is both premature and effectively moot. The Air Force is complying with its statutory mandate regarding small business competition and no decision regarding future contracts has been made. Beyond that, Rhinocorps is not entitled to the relief it seeks and this Court's jurisdiction does not extend to interfering with agency discretion by directing future contracting and ordering an award of a contract to a particular contractor.

Similarly, Rhinocorps has alleged no facts that would establish its standing to challenge the DTRIAC Contract. Nor has Rhinocorps demonstrated that this Court possesses jurisdiction to consider any challenge to a delivery order pursuant to that contract, inasmuch as the Federal Acquisition Streamlining Act of 1994 specifically exempts such a protest from this Court's jurisdiction. In addition, to these jurisdictional defects which alone are fatal to its protest, Rhinocorps simply has failed to state a cause of action regarding the DTRIAC contract or any

delivery order issued pursuant to it, because Rhinocorps has failed to allege that any aspect of the DTRIAC contract is unlawful.

Finally, even if the Court possessed jurisdiction with respect to any aspect of Rhinocorps' complaint, Rhinocorps cannot demonstrate that it is entitled to the drastic remedy of injunctive relief.

## ARGUMENT

## I. Standard Of Review For Motion To Dismiss

### A. The Standard Of Review For Dismissal For Lack Of Subject Matter Jurisdiction

It is well-established that the United States Court of Federal Claims is a court of limited jurisdiction. Inter-Coastal Xpress, Inc. v. United States, 296 F.3d 1357, 1365-66 (Fed. Cir. 2002). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed" and its "consent to be sued must be construed strictly in favor of the sovereign and not enlarge[d] . . . beyond what the language requires." United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992) (citations and internal quotation marks omitted). As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983), cert. denied, 464 U.S. 826 (1983).

Subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, or upon appeal. Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993). Once jurisdiction is challenged by the Court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997). However, "[i]n ruling on a motion to dismiss for lack of jurisdiction, the court is not confined to an examination of the complaint, but may take into account 'evidentiary matters outside the pleadings.'" Thomas v. United States, 34 Fed. Cl. 619, 621 (1995) (quoting Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed Cir. 1985)), aff'd, 101 F.3d 714 (Fed. Cir. 1996) (table).

When deciding a motion to dismiss based upon either lack of subject matter jurisdiction or failure to state a claim, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed Cir. 1989). If a defendant challenges the jurisdiction of the Court, however, the plaintiff cannot rely merely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt, 298 U.S. at 189.

### B. Standard Of Review For Dismissal Pursuant To Rule 12(b)(6)

A motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the plaintiff's alleged facts do not entitle it to a remedy. Godwin v. United States, 338 F.3d 1374, 1377 (Fed. Cir. 2003); Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). As the recent Supreme Court explained recently in Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955 (2007), to survive a motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." 127 S. Ct. at 1965. However, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (internal citations omitted). Moreover, the Court should not place weight upon any assertions in the complaint other than allegations of fact, because "legal conclusions, deduction, or opinions couched as factual allegations are not given a presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162, 168 (1992) (citation omitted).

## II. The Court Should Dismiss Rhinocorps' Protest As It Relates To The Air Force's Requirements Analysis

### A. Rhinocorps Lacks Standing

"Standing to sue is a threshold requirement in every federal action." Sicom Sys. Ltd. V. Agilent Tech., Inc., 427 F.3d 971, 975 (Fed. Cir. 2005) (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]." Myers Investigative and Security Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002). The party seeking to invoke Federal jurisdiction bears the burden of demonstrating standing by a

preponderance of the evidence and, because standing is jurisdictional, failure to satisfy that burden "precludes a ruling on the merits." The Centech Group, Inc. v. United States, 78 Fed. Cl. 496, 503 (2007) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) and Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1370 (Fed. Cir. 2003)) (internal quotation marks omitted).

"The Court of Federal Claims has jurisdiction to review both pre-award and post-award bid protests pursuant to 28 U.S.C. § 1491(b), enacted as part of the Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, 110 Stat. 3870." Banknote Corp. Of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004). "That provision allows an 'interested party' to file an action in the Court of Federal Claims objecting to 'a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.'" Id. (citing 28 U.S.C. § 1491(b)(1)).

In American Federation of Government Employees, AFL-CIO v. United States, 258 F.3d 1294 (Fed. Cir. 2001), the court of appeals held that the ADRA's use of the term "interested party" intended the same meaning as that found in the Competition in Contracting Act (CICA). "The CICA explicitly defines the term as 'an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract.'" Banknote Corp. Of Am., 365 F.3d at 1350 (citing 31 U.S.C. § 3551(2)). Accordingly, as the court of appeals explained, "[a]fter reviewing the legislative history, we concluded that Congress intended standing under the ADRA to be limited to disappointed bidders. . . . We therefore constructed the term 'interested party' in accordance with the CICA

definition and held that standing under the ADRA is 'limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award or by failure to award the contract.'" Id. at 1352 (citing Am. Fed'n of Gov't Employees, 258 F.3d at 1301-02). "By adopting the definition [of interested party] in the CICA, the Federal Circuit implicated an established understanding of the words 'bidder' and 'offeror' that cannot be divorced from the context of the CICA's requirements of solicitations and competitive proposals." Fire-Trol Holdings, LLC. v. United States, 62 Fed. Cl. 440, 444-45 (2004) (citations omitted). In other words, "[t]here must be '*outstanding* a specific viable solicitation' before [a plaintiff] can establish that it is a bidder or offeror." Id. (quoting Omega World Travel, Inc. v. United States, 9 Cl. Ct. 623, 628 (1986) and noting emphasis in original).

Accordingly, to the extent Rhinocorps is protesting the Air Force's requirements evaluation, there is no "specific viable solicitation" and Rhinocorps has no direct economic interest. Yet, that is precisely what Rhinocorps is protesting.

Indeed, plaintiff's complaint is replete with concessions and acknowledgments that the Air Force's specific contracting needs for technical and scientific support for AFNWCA are still under review and no decision regarding future requirements or contracts has been made. See Compl. ¶ 19 ("The Air Force . . . indicated that no decision has been made as to how it would proceed with respect to solicitation of a follow-on to the [Rhinocorp] Contract [and] stated there was no procurement file yet in existence concerning this matter. . . ."); ¶ 26(e) (In a letter from the Air Force to Representative Heather Wilson the Air Force stated that "[t]he Government plans to conduct market research for these new requirements by issuing a Sources Sought Synopsis to identify potential sources capable of meeting the new ARSS scientific and technical

requirements."); ¶ 29(a) (In a second letter from the Air Force to Representative Wilson the Air Force stated that it "intends to conduct further market research through the issuance of a Sources Sought Synopsis to make sure small businesses are afforded an opportunity to compete to fill the needs of ARSS."); ¶ 30 ("Based on the Air Force's responses to the congressional inquiries, it appears the Air Force may still solicit a small business set-aside contract that will encompass some or all of the requirements of the ARSS Contract."); ¶ 33(f) (In a letter from the Air Force to Rhinocorps' counsel stating "ARSS is in the process of planning its long term requirements" and "[n]o final decision on how best to fill those needs has yet been made nor will be made until after responses to the sources sought synopsis have been analyzed."). Accordingly, Rhinocorps concedes that no decision regarding future contracts has been made. Thus, Rhinocorps protest is wholly premature. See Bannum, Inc. v. United States, 56 Fed. Cl. 453, 462 (2003) ("Without a [conclusion of the procurement], plaintiff's claim before this court is premature.") (citation omitted).

Consequently, in the absence of any "specific viable solicitation," Rhinocorps clearly cannot be an "bidder" or "offeror." Similarly, Rhinocorps cannot demonstrate "direct economic interest" in a contract that has not been identified or planned, let alone solicited. Rhinocorps has thus failed to establish the requisite standing to protest the Air Force's future, as of yet unidentified and unsolicited, contracting determinations. The Court should therefore dismiss the complaint, to the extent that it protests the Air Force's ongoing procurement process, for lack of jurisdiction.

**B. Rhinocorps' Moot Because The Air Force Is Already Complying With The Governing FAR Requirements**

Even if the Court possessed the jurisdiction to entertain Rhinocorps challenge to the Air Force's ongoing procurement process, Rhinocorps effectively concedes in its complaint that the Air Force is already complying with the relevant provision of the Federal Acquisition Regulations (FAR). Specifically, Rhinocorps seeks an order from this Court requiring the Air Force to "perform the analysis set forth in FAR 19.502-2(b)." Compl., Relief Requests ¶¶ 1, 4, and 5.

Section 19.502(b) provides in relevant part:

> The contracting officer shall set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that: (1) offers will be obtained from at least two responsible small business concerns offering the products of different small business concerns . . .; and (2) award will be made at fair market prices. Total small business set-asides shall not be made unless such a reasonable expectation exists. . . .

MCS Mgmt., Inc. v. United States, 48 Fed. Cl. 506, 511 (2001). While a contracting officer must undertake reasonable efforts to determine whether it is likely to receive offers from at least two responsible small businesses, "the law does not require the use of any particular method for assessing the availability of small businesses." Id. (citation omitted).

However, the complaint explicitly acknowledges that the Air Force is presently undertaking the analysis required by § 19.502(b), and that no decision has yet been made with respect to small business participation. "[I]t appears the Air Force may still solicit a small business set-aside contract that will encompass some or all of the requirements of the ARSS Contract." Compl. ¶ 30. See also Compl. ¶ 29(a) (In a second letter from the Air Force to

Representative Wilson the Air Force stated that it "intends to conduct further market research through the issuance of a Sources Sought Synopsis to make sure small businesses are afforded an opportunity to compete to fill the needs of ARSS.").

In short, the Air Force is presently performing the only form of relief sought by Rhinocorps to which it could arguably be entitled. Accordingly, Rhinocorps' request that this Court order the Air Force to engage in the analysis required pursuant to § 19.502(b) is moot. Alternatively, Rhinocorps' protest regarding this analysis is premature because the Air Force is undertaking the necessary market analysis but no decision has been made as of yet.

The remaining relief requested by Rhinocorps in connection with the Air Force's ongoing requirements analysis is relief that is well beyond the scope of this Court's authority. Specifically, Rhinocorps asks this Court 1) to order the Air Force to "solicit a small business set-aside contract as a follow-on to the ARSS Contract" Compl. ¶¶ 1, 5; and 2) to order the Air Force to extend the terms of the expired contract with Rhinocorps, Compl. ¶ 4.

"[T]his court does not have equitable jurisdiction to direct an agency regarding such future contracts." Forestry Surveys & Data v. United States, 44 Fed. Cl. 485, 492 (1999). "The plain language of our bid protest jurisdiction covers 'action[s] by an interested party objecting to a solicitation by a Federal agency for bids or *proposals for a proposed contract* or to a proposed award or any alleged violation of statute or regulation in connection with a procurement or a *proposed procurement*." Id. (citing 28 U.S.C. § 1491(b)(1)). "Thus, no action can be maintained regarding future, and at this point, speculative, contracts." Id.

Moreover, "[c]ourts have been virtually unanimous in declining to direct the award of contracts, believing that this decision is properly left to the discretion of the contracting agency."

Bannum, Inc., 56 Fed. Cl. at 459. "The law is well-settled that the determination of an agency's procurement needs and the best method for accommodating them are matters primarily with the agency's discretion." ABF Freight Sys., Inc. v. United States, 55 Fed. Cl. 392, 409 n.13 (2003) (citation omitted). See also Contract Custom Drapery Serv. v. United States, 6 Cl. Ct. 811, 819 (1984). ("This court's jurisdiction is not so broad as to contemplate the affirmative award of a contract to a particular bidder.").

Accordingly, this Court does not possess the authority to grant Rhinocorps the relief it seeks, and, therefore, Rhinocorps' complaint in this regard should be dismissed.

## III. The Court Should Dismiss Rhinocorps' Protest As It Relates To The DTRIAC Contract

### A. Rhinocorps Has Failed To Demonstrate That It Has Standing To Protest The DTRIAC Contract

To the extent that the complaint attempts to assert a cause of action related to the DTRIAC contract, Rhinocorps has not alleged any facts that would suggest that it has standing to bring such a challenge. As discussed above, to establish standing in a bid protest, "a plaintiff must show that it (1) is an 'interested party,' *i.e.*, an actual or prospective bidder of offeror and (2) has a 'direct economic interest . . . affected by the award of the contract or by failure to award the contract.'" The Centech Group, Inc. v. United States, 78 Fed. Cl. 496, 503 (2007) (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006)).

The mere fact that work performed pursuant to the now-expired Rhinocorps contract may also be performed under the DTRIAC contract does not convey standing upon Rhinocorps to protest the DTRIAC contract. Rather, Rhinocorps must demonstrate that it has standing to protest that particular contract, and this Rhinocorps has failed to do. Rhinocorps has not alleged

that it was "an actual or prospective bidder or offeror" to the DTRIAC contract. Moreover, as discussed more fully below, Rhinocorps has not identified any work under the DTRIAC contract that should have been separately solicited and for which Rhinocorps might have been a bidder or offeror. Accordingly, Rhinocorps has failed to establish that it is an "interested party" in the DTRIAC contract such that it has standing to protest it.

### B. This Court Does Not Possess Jurisdiction To Entertain A Protest Based Upon A Delivery Order Pursuant To The DTRIAC Contract Pursuant To The Federal Acquisition Streamlining Act

In addition to failing to allege facts that would sustain a protest of the underlying DTRIAC contract, Rhinocorps has failed to establish this Court's jurisdiction to entertain a claim related to the delivery order cited in paragraph 13 of the complaint.

The Federal Acquisition Streamlining Act of 1994 ("FASA") provides that "[a] protest is not authorized in connection with the issuance of a task order or delivery order except for a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order was issued." Idea Int'l, Inc. v. United States, 74 Fed. Cl. 129, 135 (2006) (citing 10 U.S.C. § 2304c).[2] Subpart 16.5 of the FAR, "Indefinite Delivery Contracts," implements this FASA provision, stating that "[n]o protest under subpart 33.1 is authorized in connection with the issuance or proposed issuance of an order under a task-order or delivery-order contract, except for a protest on the grounds that the order increases the scope, period, or maximum value of the contract." Id. (citing FAR §16.505(a)(9)). "This court cannot frustrate the intent of Congress, which was to exempt from protest the issuance of individual task orders

---

[2] Section 2304c also provides that a protest of an order valued in excess of $10,000,000 may be permitted, but that the Comptroller General of the United States shall have exclusive jurisdiction over such a protest. See 10 U.S.C. § 2304c(e).

to contractors who had already received their awards, subject to protest, of their master [indefinite delivery, indefinite quantity] contracts." A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 134 (2006). Although the Administrative Dispute Resolution Act of 1996 expanded this Court's bid protest jurisdiction, it "left intact the bar against a specific type of bid protest, the protest of the issuance of a task order on a multiple award IDIQ contract not alleging any of the exceptions enumerated." Id.

The DTRIAC contract, attached as Exhibit A, is an indefinite quantity delivery-order contract under subpart 16.5 of the FAR. See Exhibit A at p. 20 ("This is an Indefinite Quantity contract as contemplated by FAR 16.504. . . ."). Consequently, to the extent that Rhinocorps protests Delivery Order No. 00220024, cited in paragraph 13 of the complaint, or any other delivery order under the DTRIAC contract, it has failed to satisfy its burden to establish this Court's jurisdiction.

Rhinocorps' reliance on LBM, Inc., B-290682, 2002 CPD ¶ 157, 2002 WL 31086989 (Sept. 18, 2002) and N&N Travel & Tours, Inc., B-285164.2, B-285164.3, 2000 CPD ¶ 146, 2000 WL 125158 (Aug. 31, 2000) is ineffective because in those cases the GAO construed the challenge as one to the underlying contract - not the task order. See LBM, Inc., 2002 WL 31086989 at *3 ("This is a challenge to the terms of the underlying . . . solicitation and is within our bid protest jurisdiciton."); N&N Travel & Tours, Inc., 2000 WL 125158 at *5 ("[W]e conclude that the small business protesters are mounting a challenge to the underlying soliciation. . . .").

These cases are also inapposite, because the GAO failed to determine that the protestors possessed standing. However, to the extent that the GAO might permit a protest without

determining a protestor's standing, this Court may not. See McRae Indus., Inc. v. United States, 53 Fed. Cl. 177, 180-81 (2002) ("[S]tanding is a threshold issue which must be resolved before a protestor can argue the merits of whether it is entitled to relief" (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998))). As this Court has explained, "the GAO approach is contrary to the plain language of § 1491(b)(1), which requires plaintiff to be an 'actual or prospective bidder' *and* have the requisite 'direct economic interest.'" Id. (citing Fed. Data Corp. v. United States, 911 F.2d 699, 704 (Fed. Cir. 1990)). Consequently, to the extent that the GAO decisions relied upon by Rhinocorps permitted a challenge to a solicitation without first determining the threshold issue of standing, these decisions are directly contrary to the manner in which this Court has construed its limited jurisdiction in the bid protest context.

### C. Rhinocorps Has Failed To Allege A Claim Related To The DTRIAC Contract Upon Which Relief Could Be Granted

Beyond the foregoing jurisdictional obstacles, Rhinocorps has failed to state a claim related to the DTRIAC contract upon which relief could be granted. Specifically, although Rhinocorps contends in the complaint that work performed under the DTRIAC contract is improper, Rhinocorps has failed to identify any aspect of that contract, or work performed pursuant to it, that was not lawfully procured.

CICA "requires executive agencies, when procuring property or services, to 'obtain full and open competition through the use of competitive procedures.'" HDM Corp. v. United States, 69 Fed. Cl. 243, 254-55 (2005) (quoting 41 U.S.C. § 253(a)(1)(A) (2000)). Rhinocorps expressly concedes that DTRIAC contract was "competed pursuant to an open solicitation." Compl. ¶ 11. Therefore, to state a viable claim that work performed pursuant to that contract is unlawful,

Rhinocorps must allege facts demonstrating that the agency has "modif[ied] the contract so that it materially departs from the scope of the original procurement violat[ing] CICA by preventing potential bidders from participating or competing for what should be a new procurement." Id. (citing AT&T Comm., Inc. v. Wiltel, 1 F.3d 1201, 1205 (Fed. Cir. 1993); CW Gov't Travel, Inc. v. United States, 61 Fed. Cl. 559, 573 (2004); CESC Plaza Ltd. P'ship v. United States, 52 Fed. Cl. 91, 93 (2002)).

This Rhinocorp has not done. As a result, Rhinocorps has "suffered no harm,' and, therefore, has failed to allege a viable cause of action related to the DTRIAC Contract.

**D. The Relief Rhinocorps Requests Related To The DTRIAC Contract Is Not Within The Authority Of This Court To Grant**

Even if the complaint stated a viable cause of action that was within the scope of this Court's jurisdiction, to the extent Rhinocorps' protest relates to the DTRIAC contract, it should be dismissed, because the relief requested by Rhinocorps is beyond the scope of this Court's authority. Specifically, Rhinocorps requests that this Court prohibit the Air Force from issuing any delivery order that could conceivably fall within the admittedly broad scope of the now-expired Rhinocorps contract. However, satisfying that request, would require this Court to engage directly in contract administration. And, it is well established that matters of contract administration are beyond this Court's purview. E.g., Chapman Law Firm v. United States, 63 Fed. Cl. 519, 527 (2005). "If plaintiff's suggested approach were adopted, the court would exceed its limited review powers and would tread into an area reserved for agency discretion." Graphicdata, LLC, 37 Fed. Cl. at 782. See also CCL, Inc. v. United States, 39 Fed. Cl. 780, 788 (1997) (distinguishing between a viable cause of action based upon CICA and contract

administration).

Therefore, Rhinocorps' claims should be dismissed for failure to state a claim upon which the requested relief may be granted.

## IV. Rhinocorps Is Not Entitled To Injunctive Relief

### A. Standard of Review For Preliminary Injunctions

"A preliminary injunction is an extraordinary and drastic remedy . . .; it is never afforded as a matter of right." Munaf v. Green, No. 06-1666, slip. op. at 12 (U.S. 12, 2008) (internal quotation marks and citations omitted). Because the grant of an injunction is "extraordinary relief," the Court applies "exacting standards." Lermer Germany GmbH v. Lermer Corp., 94 F.3d 1575, 1577 (Fed. Cir. 1996). To obtain the extraordinary relief of an injunction prior to trial, the movant must establish the following:

1) the movant is likely to succeed on the merits at trial,

2) the movant will suffer irreparable harm if preliminary relief is not granted,

3) the balance of the hardships tips in the movant's favor, and

4) a preliminary injunction will not be contrary to the public interest.

FMC Corporation v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). A challenge to the Court's jurisdiction to consider a case renders "success more *unlikely* due to potential impediments to even reaching the merits." Munaf, slip. op. at 13.

Failure to meet the criteria of any one factor may require denial of the request for a preliminary injunction:

> No one factor, taken individually, is necessarily dispositive. If a

> preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned to the other factors, to justify the denial.

Id. (citation omitted) (emphasis added).

The party seeking preliminary injunctive relief bears the extremely heavy burden of demonstrating its entitlement to this extraordinary relief by clear and convincing evidence. E.g., Cincom Systems, Inc. v. United States, 37 Fed. Cl. 266, 268 (1997) (citing Baird Corp. v. United States, 1 Cl. Ct. 662, 664 (1983)). A party faces an even greater burden when it seeks injunctive relief, which, if granted, would interfere with Governmental operations. Yakus v. United States, 321 U.S. 414, 440 (1940); Virginia Railway Co. v. Systems Federation No. 40, 300 U.S. 515, 552 (1937).

**B. Rhinocorps Is Not Likely To Succeed On The Merits Of Its Claims**

As demonstrated above, Rhinocorps has failed to allege a viable cause of action that falls within the scope of this Court's jurisdiction. Accordingly, Rhinocorps has not demonstrated that it is likely to succeed on the merits. Furthermore, the Government's challenge to this Court's jurisdiction to consider Rhinocorps' claims renders success on the merits of its case even more unlikely. See Munaf, slip. op. at 13.

**C. Rhinocorps Has Not Demonstrated That It Will Be Irreparably Harmed**

Rhinocorps contends that it will suffer irreparable harm by "losing work that it otherwise would have the opportunity to compete for." Pl. Mtn. at 20. However, as detailed above, the Air Force's future contracting needs are presently being assessed, and Rhinocorps has indicated it

intends to participate in that process by submitting a response to the sources sought synopsis. Compl. at ¶ 28. Accordingly, Rhinocorps has lost no competitive opportunity and could, ultimately, receive a contract award.

### D. <u>Rhinocorps Has Not Demonstrated That The Balance Of Hardships Weighs In Favor Of The Injunctive Relief</u>

Rhinocorps makes only the conclusory contention that the Air Force will not be harmed by forcing "the Air Force to continue obtaining services as it has in the past." Pl. Mtn. at 21. However, as demonstrated above, the requirements and contracting needs of the Air Force have changed significantly due to reorganization. Consequently, it no longer needs "to continue obtaining services as it has in the past." Rather, the Air Force needs the opportunity to exercise its discretion to assess its future requirements and proceed with procurement efforts without judicial interference. The Air Force would be considerably harmed if the Court were to interfere with that discretion, derail the Air Force's current procurement efforts, and force the Air Force to extend an expired contract that it has determined no longer serves its needs. Again, Rhinocorps is currently participating in the Air Force's market research and may ultimately receive a contract award. Compl. at ¶ 28. Accordingly, the balance of harms clearly weigh against the granting of injunctive relief.

### E. <u>The Public Interest Is Not Served By Granting The Injunctive Relief</u>

Finally, Rhinocorps has failed to demonstrate that the injunctive relief it seeks will serve the public interest. In this instance, Rhinocorps identifies the public interest that would be served as "the interest in ensuring that public officials treat contractors fairly and generally obey procurement laws and regulations." Pl. Mtn. at 21. As demonstrated above, Rhinocorps has

failed to identify a single instance in which the Air Force has not obeyed procurement laws and regulations. Accordingly, Rhinocorps has not demonstrated that the public interest would be served in derailing the Air Force's proper exercise of its procurement function. See, e.g., Alion Science & Tech. Corp. v. United States, 74 Fed. Cl. 372, 376 (2006) (concluding that aggrieved bidder had not shown how an injunction would serve the public interest where it had "not demonstrated clearly that the procurement process has been compromised"). "The public's interest in open, honest, and fair procurements is not 'insignificant,' but in this circumstance the Agency's interest in proceeding without unnecessary judicial involvement is overriding." Id.

By asking this Court to order that Rhinocorps' expired contract be extended and converted into a sole-source contract, Rhinocorps effectively seeks to circumvent a fair and open procurement process, which cannot be in the public interest.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court dismiss plaintiff's complaint and deny plaintiff's request for injunctive relief.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

/s/ Courtney E. Sheehan
COURTNEY SHEEHAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-7995
Fax: (202) 514-8624

Attorneys for the defendant

Of Counsel:

CHRISTOPHER L. McMAHON, Major
United States Air Force
Trial Attorney
Commercial Litigation
Air Force Legal Operations Agency
1501 Wilson Blvd, Suite 606
Arlington, VA 22209
Tele: (703) 696-9091
Fax: (703) 696-9084

June 20, 2008

CERTIFICATE OF FILING

I hereby certify that on the 20th day of June, 2008, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS AND RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Courtney E. Sheehan