**UNITED STATES COURT OF FEDERAL CLAIMS**

**Bid Protest**

**RHINOCORPS LTD. CO.,**

**Plaintiff,**

**No. 08-410 C**
**(Senior Judge Hodges)**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Plaintiff RhinoCorps Ltd. Co., opposes the Government's Motion to Dismiss this bid protest. Contrary to law, the Government has diverted work from a small business set-aside program to a contract being performed by an other-than-small business without first determining that these services are no longer appropriate for small businesses to provide. As the contractor performing the last contract issued under this small business set-aside program and a potential bidder on future contracts awarded under this program, RhinoCorps has the right to protest the Government's actions. This protest states a claim upon which relief may be granted and the Court has jurisdiction to address it. Accordingly, the Government's motion should be denied.

## I. RESPONSE TO GOVERNMENT STATEMENT OF FACTS

The Government's motion to dismiss relies on a statement of facts. See Motion at 2-4. This statement goes beyond the allegations of RhinoCorps' Complaint for Declaratory Judgment and Injunctive Relief.

In particular, there are no allegations in the complaint nor elsewhere in the record to support the Government's allegations that the Air Force has undergone substantial

reorganization, that the requirements of the 709th Armament Systems Squadron (ARSS) have changed, that internal resources are available and that the services heretofore provided by RhinoCorps are now redundant and unnecessary. Motion at 3.

Although these allegations are drawn from correspondence written on behalf of the Air Force and referenced in the Complaint, RhinoCorps does not allege that these representations are accurate. To the contrary, RhinoCorps contends that the decision of the Air Force not to solicit a small business set-aside contract as a follow-on to the contract it was performing for the ARSS (the "ARSS Contract") because its requirements have changed and that there is no need for a follow-on contract is a pretext and a *post hoc* rationalization. RhinoCorps alleges in its complaint that the requirements of the Air Force set forth in the Sources Sought Synopsis do not differ in any material way from the requirements of the ARSS Contract. There is nothing in the synopsis to indicate that the ARSS mission has changed, any additional expertise is necessary or that the Air Force requirements cannot be satisfied by a follow-on to the ARSS Contract. Complaint, ¶ 37(h).

RhinoCorps further contends in its Complaint that the Air Force decision is actually the result of the following:

(a) Due to organizational difficulties, the Air Force failed to timely initiate the process for soliciting a follow-on contract to the ARSS Contract.

(b) On information and belief, the Air Force was advised by ITT-AES that it is not necessary for the Air Force to solicit a follow-on contract because the requirements being satisfied under the ARSS Contract could be performed under a contract issued by the Defense Threat Reduction Agency in support of the Defense Threat Reduction Information Analysis Center (the "DTRIAC Contract"). Also on information and belief, ITT-AES further advised the

Air Force that ITT-AES can perform the services to be provided under a follow-on contract more cheaply than a small business. Complaint, ¶ 38.

RhinoCorps also alleges in its Complaint that it further believes the Air Force decision is pretextual and a *post hoc* rationalization for the following reasons:

(a) The Air Force did not argue that the ARSS requirements or mission had changed until after RhinoCorps presented the Air Force with legal authority concerning its obligation to maintain the small business set-aside program represented by the ARSS Contract.

(b) Despite several requests by RhinoCorps, the Air Force has not identified the new requirements that have motivated its decision not to solicit a follow-on contract to the ARSS Contract.

(c) Despite several requests by RhinoCorps, the Air Force did not provide any statements of work for task orders to be issued under the DTRIAC Contract in lieu of a follow-on contract to the ARSS Contract until it responded to RhinoCorps' FOIA request on 28 May 2008.

Complaint, ¶ 39.

The statement of facts relied upon by the Government also includes representations as to the Government's purpose in issuing the Sources Sought Synopsis. Motion at 3. Again, the Complaint does not contain any allegations to support these so-called facts. RhinoCorps itself has no knowledge what the Air Force's rationale is for issuing the synopsis or what it intends to do with the information it gathers.

Lastly, the Air Force does not provide a foundation in the form of an affidavit or other testimony to support the truth of those allegations in its statement of facts that go beyond the

contentions in the complaint. Thus, for the purpose of this motion, these allegations should be disregarded.

## II. COURT HAS JURISDICTION OVER THIS PROTEST

The Government contends the Court of Federal Claims lacks jurisdiction over this protest and therefore it should be dismissed. According to the Government, the Court does not have the authority to consider the protest because RhinoCorps lacks standing, Motion at 7-10 & 13-14, the Court cannot direct the award of contracts, Motion at 12-13 & 17-18, and the Court cannot address a challenge to a delivery order, Motion at 14-16.

None of these contentions are correct. This Court has the power to consider the merits of this protest, and if it decides to sustain the protest, to order the injunctive relief requested by RhinoCorps.

### A. RhinoCorps has Standing

The Government argues that RhinoCorps lacks standing to bring this protest. Specifically, the Government maintains that RhinoCorps does not have standing to challenge either the requirements analysis performed (or actually, not performed) by the Air Force, Motion at 7-10, or the DTRIAC Contract, Motion at 13-14. The Government is mistaken. RhinoCorps has standing as to all issues presented in this protest.

The protest brought by RhinoCorps closely parallels a protest sustained by the Comptroller General in *LBM, Inc.,* No. B-290682, September 18, 2002, 2002 CPD ¶ 157. While not binding authority on this Court, the decisions of the Comptroller General are instructive in the area of bid protests. *Chapman Law Firm v. United States*, 63 Fed. Cl. 519, 527 (2005).

In *LBM, Inc.*, LBM*,* a small business concern, protested to the GAO the decision of the Army to acquire transportation motor pool services at Folk Polk under a large consolidated

contract established by a regionalization plan. This plan called for multiple award indefinite delivery, indefinite quantity task order contracts. LBM protested that these services, which for the preceding ten years were provided exclusively by small business concerns under a small business set-aside program, should continue to be set-aside for small business competition.

The GAO noted that under FAR 19.502-2(b), contracting officers generally are required to set-aside for small business all acquisitions exceeding $100,000 if there is a reasonable expectation of receiving fair market price offers from at least two responsible small business concerns. However, there was no evidence in the record that the contracting officer considered whether the services should be set -aside for small business participation. By not considering the applicable law and regulations pertaining to small businesses, the Comptroller General found that the Army violated FAR 19.502-2(b). *LBM's* protest was sustained and the GAO recommended that the Army consider whether the transportation motor pool transportation at Folk Polk should continue to be set-aside exclusively for small business participation.

The Government in this case argues that there is no outstanding solicitation to which RhinoCorps' protest is directed. However *LBM* makes it clear that a protest objecting to the diversion of work from a small business set-aside program to a contract being performed by an other-than-small contractor is a challenge to the terms of the underlying solicitation of the large contract and thus within the GAO's bid protest jurisdiction. To maintain a protest before the GAO, the protester must be an interested party. An "interested party" under the GAO bid protest regulations is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of a contract or by the failure to award a contract." 4 CFR § 21.0(a)(1).

This is the same standing requirement applicable to parties bringing bid protests to the Court of Federal Claims where interested parties are "actual or prospective bidders or offerors

whose direct economic interests would be affected by the award of the contract or by failure to award the contract." *Banknote Corporation of America, Inc., v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004). *See also American Federation of Government Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) ("We therefore construe the term 'interested parties' in § 1491(b)(1) in accordance with the CICA, and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract.")

B. RhinoCorps Not Asking Court to Direct Award of Contract

In this protest, RhinoCorps requests, *inter alia,* a permanent injunction:

- Requiring the Air Force to solicit a small business set-aside contract as a follow-on to the ARSS Contract, or alternatively, requiring the Air Force to perform the analysis set forth in FAR 19.502-2(b) before determining whether it is appropriate to solicit a small business set-aside contract as a follow-on to the ARSS Contract.

- Prohibiting the Air Force from ordering work within the scope of the ARSS Contract under the DTRIAC Contract, or any other contract.

- Requiring the Air Force to extend the term of the ARSS Contract until a new small business set-aside contract addressing the same requirement is ready to be performed, or alternatively, the Air Force decides in accordance with FAR 19.502-2(b) that this requirement can no longer be satisfied by a small business set-aside contract.

*See* Complaint, Relief Requested, ¶¶ 5, 6 and 7.

The Government contends that this relief is beyond the scope of this Court's authority. It claims such relief is tantamount to improperly directing the award of a contract, which is a matter left to the agency. Motion at 12-13.

Congress has conferred upon this Court broad discretion in crafting injunctive relief in bid protest matters. The Court of Federal Claims "may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2).

Contrary to the Government's contention, RhinoCorps' request for injunctive relief would not require the Court to direct the award of a contract. None of the cases cited by the Government involve circumstances as presented here where a protester seeks to prevent an agency from diverting work from a small business set-aside program without first undertaking an analysis justifying such action. *See, Forestry Surveys and Data v. United States,* 44 Fed. Cl. 45 (1999), *ABF Freight Sys., Inc. v. United States*, 55 Fed. Cl. 392 (2003) and *Contract Custom Drapery Serv. v. United States*, 6 Cl. Ct. 811 (1984). Moreover, the Government has not cited any case where the Court of Federal Claims has been found to lack the authority to provide the form of permanent injunctive relief RhinoCorps seeks here.

If the Court is without authority to enjoin an agency from diverting work from a small business set-aside program without complying with FAR 19.502-2(b), then this regulation is rendered meaningless. While the FAR requires that the contracting officer set aside any acquisition over $100,000 for small business participation when the specified criteria are present, without the possibility of injunctive relief, any agency could simply disregard this instruction and award contracts to any size companies it desires with impunity.

Here, if RhinoCorps is not entitled to injunctive relief enjoining the Air Force, the Air Force is free to disregard a 20-plus years old small business set-aside program and send work elsewhere. Even if this Court were now to issue an injunction requiring the Air Force to comply with FAR 19.502-2(b), that relief by itself means little where the Air Force has already allowed

the ARSS Contract to expire and has already been ordering work within the scope of that contract from ITT-AES under the DTRIAC Contract.

The Government cites *Chapman Law Firm*, 63 Fed. Cl. at 527, *Graphicdata v. United States,* 37 Fed. Cl. 771, 782 (1997) and *CCL v. United States*, 39 Fed. Cl. 780, 788 (1997) regarding judicial inference with contract administration. Yet, each of these cases recognize that concerns of contract administration do not shield agency misconduct where violations of procurement law have occurred. *See, e*.g. *Graphicdata, LLC* 63 Fed. Cl. at 782. "To ensure that agencies do not abuse [their discretion to make procurement decisions], Congress empowered the Court of Federal Claims . . . to override the agency decision-making process when a disappointed bidder proves that an agency action was unreasonable or in clear and prejudicial violation of a statute." RhinoCorps is not asking the Court to interfere with contract administration -- it asks for procurement law to be enforced.

If the Court is without authority to extend an existing contract or prevent work from being diverted to another contract, then there is no remedy when the Government decides to let a small business set-aside contract expire before performing an analysis under FAR 19.502-2(b). The remedy for violating FAR 19.502-2(b) must encompass an extension of the existing contract or the rights conferred on small businesses by this provision mean nothing.

### C. Protest Not Barred as Directed to Delivery Order

The Government also maintains that this Court cannot exercise jurisdiction over this protest because it involves a delivery order issued under the DTRIAC Contract. It argues that 10 U.S.C. § 2304c does not permit a protest of a delivery order except under circumstances not applicable here.

The Government is mistaken because this protest is not directed to a delivery order. Once again, decisions of the Comptroller General are instructive. In *LBM, Inc.*, *supra,* the Government raised the same objection to the GAO exercising jurisdiction over that protest. The Comptroller General disposed of this argument as follows:

> We agree with LBM that the limitation on our bid protest jurisdiction in 10 U.S.C. § 2304c(d) does not apply here. Contrary to the Army's arguments, LBM is not challenging the proposed issuance of a task order for these services, but is raising the question of whether work that had been previously set aside exclusively for small businesses could be transferred to [the consolidated contract], without regard to the Federal Acquisition Regulation (FAR) § 19.502-2(b) requirements pertaining to small business set-asides. This is a challenge to the terms of the underlying [consolidated] solicitation and is within our bid protest jurisdiction.
>
> • • •
>
> This view is consistent with the legislative history to this particular section, which was enacted in the Federal Acquisition Streamlining Act of 1994 (FASA) . . ..

*See, in accord, N&N Travel & Tours, Inc. et. al.,* B-285164.2, August 31, 2000, 2000 CPD ¶ 146 at 6. ("... we conclude that the small business protesters are mounting a challenge to the terms of the underlying solicitation, and that the limitation on our bid protest jurisdiction in 10 U.S.C. § 2304c(d) therefore does not apply to this protest . . . this portion of the protest is properly within our bid protest jurisdiction.")

Like the protests at issue in *LBM* and *N&N*, the RhinoCorps protest is directed to the underlying solicitation for the DTRIAC Contract and thus is within this Court's bid protest jurisdiction. The Government contends that these Comptroller General decisions are inapposite, asserting first the tautology that the GAO construed the challenge as one to the underlying contract. This is because the issue before the GAO is the same as the issue presented here. That is, the Government's improper attempt to divert work from a small business set-aside program without first preparing the necessary justification.

The Government also argues that the GAO failed to determine in those cases that the protesters possessed standing but to the extent that the GAO might permit a protest without determining a protester's standing, the Court of Federal Claims may not. This argument suggests that the GAO is indifferent to standing. To the contrary, as noted above in Section II (A), the GAO and this Court have the same standing requirement. The Government quotes from *McCrae Indus., Inc. v. United States,* 53 Fed. Cl. 177 (2002) concerning this Court's criticism of the GAO's analysis of standing in a particular protest involving circumstances completely dissimilar to those in this proceeding. *McCrae* says nothing about any supposed difference between the standing requirements of the GAO and this Court.

The Government is further mistaken in assuming that RhinoCorps' protest is directed solely to the statement of work set forth in Delivery Order No. 00220024. This is the only statement of work from the DTRIAC Contract that RhinoCorps has been able to obtain from the Air Force to date. If a complete copy of the DTRIAC Contract is not included in the administrative record, then RhinoCorps will pursue this document in discovery. RhinoCorps believes there are other statements of work issued under the DTRIAC Contract, including the statement of work set forth in the solicitation, that are substantially the same as the statement of work in the ARSS Contract.

## III. PROTEST STATES A VALID CLAIM

The Government also seeks to dismiss this protest on the grounds that RhinoCorps fails to state a claim upon which relief can be granted. In its motion, the Government alleges that the Air Force is already complying with the FAR, so the protest is moot or premature, Motion at 11-12, and that RhinoCorps fails to identify any aspect of the DTRIAC Contract that was not lawfully procured, Motion at 16-17. Again, the Government's arguments are in error.

A. <u>Protest is Not Moot or Premature</u>

The Government contends this protest is moot or premature because it is presently complying with FAR 19.502-2(b). It claims " . . . the complaint explicitly acknowledges that the Air Force is presently undertaking the analysis required by § 19.502(b), and that no decision has yet been made with respect to small business participation." Motion at 11. This is wholly insufficient to establish that the Air Force has complied with the FAR. First, as noted in Section I, *supra,* the complaint does not allege that the Air Force is undertaking any type of analysis. RhinoCorps' allegations state only what the Air Force has represented on this subject. Further, nowhere in the representations made by the Air Force to RhinoCorps has the Air Force contended that it is proceeding in compliance with FAR 19.502-2(b). In fact, the Air Force's statement that it is now complying with 19.502-2(b) in its motion to dismiss is the first time the Air Force has made this representation.

The Government contends this protest cannot be pursued because the complaint shows that the Air Force's specific contracting needs are still under review. Motion at 9. Under the standard of review in deciding a motion to dismiss, whether on grounds of lack of jurisdiction over the subject matter or for failure to state a cause of action, unchallenged allegations of the complaint shall be construed favorably to the pleader. *C.W. Government Travel, Inc. v. United States,* 61 Fed. Cl. 569, 567 (2004). Here, there are no facts before the Court establishing the nature of the review being conducted by the Air Force. The complaint includes representations by the Air Force as to this review but as noted in Section I, *supra,* RhinoCorps contends these representations amount to a *post hoc* rationalization and pretext for avoiding the Air Force's obligations under FAR 19.502-2(b). Complaint, ¶¶ 38 and 39. The Government does not controvert these allegations in RhinoCorps complaint nor does it attempt to establish through

affidavit or other testimony the truth of the representations made by the Air Force. Finally, there is nothing in the representations made by the Air Force referred to in the complaint to indicate that it is conducting an evaluation pursuant to FAR 19.502-2(b). The gravamen of this protest is that regardless of what kind of review the Air Force is presently undertaking, the diversion of work from a small business set-aside program without first conducting the evaluation required by FAR 19.502-2(b) is contrary to law.

Notwithstanding what the Air Force now says it is doing, there are no facts alleged in the complaint nor elsewhere in the record to establish that it is complying with 19.502-2(b). If this fact can be proven at all, it can only occur when the Air Force produces the administrative record in this proceeding and RhinoCorps is granted the opportunity to conduct discovery.

FAR 19.502-2(b) requires that the contracting officer set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns and (2) award will be made at fair market prices. As a general rule, procurements must be set aside for small businesses when the contracting officer determines the factors required by FAR 19.502-2(a) exist. *Ann Riley & Associates Ltd.* B-245149, December 16, 1991, 91-2 CDP ¶ 544 at 5, 7. Deviation from this requirement requires special authorization from the head of the agency and his/her designee and a copy of the approved deviation must be furnished to FAR Secretariat. *Id.*

Where services have been successfully acquired under a small business set-aside, the set-aside should be continued unless the factors identified in FAR 19.502-2(a) no longer exist. *Sunrise International Group, Inc*. B-254875 (January 25, 1984) 94-1 CPD ¶ 93. The contracting officer is required to take reasonable efforts to ascertain whether the agency is likely to receive sufficient bids from small businesses to justify a set-aside. *Id.*

Here, there are no facts before the Court establishing that the Air Force has undertaken this analysis. Furthermore, regardless of the nature of the analysis the Air Force is now conducting, it is undisputed that no such analysis was performed prior to the Air Force allowing the ARSS Contract to expire and diverting work previously performed under a small business set-aside to the DTRIAC Contract. Lastly, the Sources Sought Synopsis, by the Air Force's own admission, only addresses the remaining requirements of the ARSS Contract not being performed by ITT-AES under the DTRIAC Contract. Complaint, ¶ 29(e). The Air Force does not address the ability of small businesses to perform the entirety of the requirements of the ARSS Contract.

B. DTRIAC Contract Properly Subject of Protest

The Government states that this protest also fails to state a claim because "although Rhinocorps contends in the complaint that work performed under the DTRIAC contract is improper, Rhinocorps has failed to identify any aspect of that contract, or work performed pursuant to it, that was not lawfully procured." Motion at 16. RhinoCorps protests the Air Force's diversion of work from a small business set-aside program to the DTRIAC Contract, which is not set aside for small business and is being performed by an other-than-small contractor. Because this diversion occurred without the contracting officer first determining whether this work could continue to be performed by small business, the DTRIAC Contract is necessarily implicated in this protest. This protest parallels the protest sustained in *LBM, Inc.*, *supra*. *See* Sections II (A) and (C), *supra.*

## IV. RHINOCORPS ENTITLED TO INJUNCTIVE RELIEF

The Government argues that RhinoCorps is not entitled to injunctive relief. Although the Court has denied RhinoCorps' Application for Temporary Restraining Order and Preliminary

Injunction, *see* Order filed July 28, 2008, a permanent injunction should be issued in this protest.[1]

Despite the Court's denial of RhinoCorps' application, RhinoCorps continues to contend that it is entitled to a permanent injunction in this case once it has had an opportunity to further substantiate the allegations in its complaint with evidence from the administrative record and discovery.

In deciding whether to issue a permanent injunction, a court considers (1) whether the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *PGBA, LLC v. United States,* 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

The weakness of the showing of one factor in support of injunctive relief may be overcome by the strength of others. *Hospital Klean of Texas, Inc. v. United States* and *Integrity and Management Services, Inc.,* 65 Fed. Cl. 618 (2005). *See also FMC Corp. v. United States*, 3 F.3d 424, 427 Fed. Cir. (1993). Indeed, an adequate case for injunctive relief can be made where one of the four factors is not established. *Reilly's Wholesale Produce v. United States* and *Four Seasons Produce, Inc*., 73 Fed. Cl. 705 (2006) at footnote 16.

A. Reasonable Likelihood of Success on the Merits

The arguments and authorities set forth above establish that the Government's motion to dismiss is not well taken. If this motion is denied and the protest continues to a hearing on the

[1] The Order of this Court filed July 28, 2008 confirms the ruling announced by the Court at the hearing on RhinoCorps' Application for Temporary Restraining Order and Preliminary Injunction held on June 17, 2008. The last line of this Order recites, however, that "Plaintiff's petitions for temporary and permanent injunctions are DENIED." The understanding of counsel for RhinoCorps is that RhinoCorps' request for permanent injunctive relief was not before the Court on June 17, 2008 and that the Court did not intend to dispose of RhinoCorps' request for permanent injunctive relief. This appears also to be the understanding of counsel for the Government as its Motion to Dismiss filed June 20, 2008 addresses RhinoCorps' request for injunctive relief. Counsel for RhinoCorps respectfully requests clarification of this aspect of the Order.

merits, RhinoCorps believes that it will prevail. This will satisfy the success on the merits requirement for a permanent injunction.

B. Irreparable Harm

The Court considers whether the petitioner has an adequate remedy at law when deciding irreparable harm. *Transatlantic Lines LLC v. United States, et. al.,* 68 Fed. Cl. 48, 57 (2005); *Overstreet Elec. Co. v. United States,* 47 Fed. Cl. 728, 743-744 (2000). Here, RhinoCorps will suffer irreparable harm if the Air Force is permitted to disregard the small business set-aside program. RhinoCorps is losing work that it would otherwise have the opportunity to compete for. Further, to the extent the Air Force delays the solicitation and award for a follow-on contract, RhinoCorps loses the opportunity to perform that work. This lost work results in lost revenue to RhinoCorps. Where, as here, a protestor has no action against the United States for lost profits, the harm to the petitioner is irreparable and that harm satisfies the second criteria for injunctive relief. *Heritage of America LLC v. United States,* 77 Fed. Cl. 66, 78 (2007).

The Government maintains that RhinoCorps cannot show irreparable harm because the Air Force's future contracting needs are presently being assessed and RhinoCorps indicates it intends to participate in that process. As discussed above, there are no facts presently before the Court to establish what analysis the Air Force is presently doing and what the result of that analysis might be. Even if the Air Force decides to solicit another small business set-aside contract incorporating a statement of work substantially similar to that of the ARSS Contract, RhinoCorps has still lost the opportunity to compete and perhaps perform that work due to the Air Force having let the ARSS Contract expire without first performing an analysis under FAR 19.502-2(b). Work that could have been performed by RhinoCorps or another small business is now being performed by ITT-AES under the DTRIAC Contract. Every service ITT-AES

performs or will continue to be performed for the Air Force under the DTRIAC Contract constitutes irreparable harm to RhinoCorps.

C. Balance of Hardships

In balancing the possibility of hardship between the parties there is consideration of the harm that injunctive relief would impose on the Government. *Transatlantic Lines, LLC* 68 Fed. Cl. at 57. Here, it is difficult to see how the Air Force could be harmed by an award of injunctive relief. The effect of the permanent injunction sought by RhinoCorps would be for the Air Force to continue obtaining services as it has in the past. Further, the Air Force is not in a position to demonstrate greater hardship than the protester when the protest is at least in part a result of its own failure to properly plan a new procurement. *See Reilly's Wholesale Produce v. United States Four Seasons Produce Inc.*, 73 Fed. Cl. at 716.

In response to this contention, the Government again argues that its needs have changed and that it would be harmed by being forced to continue to procure its requirements under the ARSS Contract. This again assumes facts that are not before the Court.

D. The Public Interest

The final showing required for the issuance of a permanent injunction is that the granting of this relief serves the public interest. The public has a strong interest in ensuring that public officials treat contractors fairly and generally obey procurement laws and regulations. *Transatlantic Lines, LLC*, 68 Fed. Cl. at 57; *C.W. Government Travel, Inc*., 61 Fed. Cl. at 577. It is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring Government officials to follow procurement statutes and regulations. *C.W. Government Travel* at 578.

In failing to solicit a follow-on to the ARSS Contract and by diverting work previously set-aside for small businesses to a contract being performed by an other-than-small business, the Air Force has engaged in actions that arbitrary, capricious and an abuse of discretion. This decision is also not in accordance with the law and is without observance of the procedure required by the law in violating, at a minimum, FAR 19.502-2(b).

The Government responds by arguing that RhinoCorps has not demonstrated that the public interest would be served by derailing the Air Force's proper exercise of its procurement function. This begs the question of whether the Air Force has indeed properly exercised its procurement functions. The arguments and authorities set forth above show that it has not.

Despite what the Government says, RhinoCorps is not attempting to circumvent a fair and open procurement process. Rather, it seeks to require the Government to comply with procurement regulations, most notably FAR 19.502-2(b). There is no dispute that the Air Force failed to perform the evaluation required by this regulation prior to letting the ARSS Contract expire and diverting work to a large contract. Having violated this requirement, the Air Force now asks the Court to find there is no relief available to remedy such a violation. This the Court should not do.

## V. CONCLUSION

For the reasons set forth above, Plaintiff RhinoCorps Ltd. Co. respectfully requests the Court to deny Defendant United States' Motion to Dismiss. RhinoCorps further requests such other relief as the Court may deem just and proper.

LEWIS AND ROCA LLP

By s/Ross L. Crown

Ross L. Crown
Attorneys for Plaintiff RhinoCorps Ltd. Co.
201 Third Street NW, Suite 1950
P. O. Box 1027
Albuquerque, New Mexico 87103-1027
Telephone: (505) 764-5402
Facsimile: (505) 764-5463

**CERTIFICATE OF FILING**

I hereby certify that on this 6th day of August, 2008, a copy of the foregoing "Plaintiff's Response in Opposition to Motion to Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Ross L. Crown
Ross L. Crown