# In the United States Court of Federal Claims

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **RHINOCORPS LTD. CO.,** | \* | |
| Plaintiff, | \* | |
| v. | \* | No. 08-410C |
| **THE UNITED STATES,** | \* | (Filed Oct. 10, 2008) |
| Defendant. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER FOR SUPPLEMENTAL BRIEFING

This case was transferred to the undersigned pursuant to RCFC 40.1(b) by order dated September 19, 2008. Briefing on defendant's motion to dismiss filed pursuant to RCFC 12(b)(1) and 12(b)(6) was completed on August 27, 2008. This order concerns the first ground – subject matter jurisdiction. An important decision was issued by the United States Court of Appeals for the Federal Circuit on August 28, 2008. See Distributed Solutions, Inc. v. United States, 539 F.3d 1340 (Fed. Cir. 2008). The undersigned transferee judge has reviewed the briefs and determines that supplemental briefing must address questions that the briefs do not answer on the issue of subject matter jurisdiction of the United States Court of Federal Claims. See Arctic Corner, Inc. v. United States, 845 F.2d 999, 1000 (Fed. Cir. 1988) (stating that trial court has responsibility to determine its own jurisdiction *sua sponte* whenever it appears it may be lacking).

1. Background

The court accepts the allegations of the complaint as setting forth the undisputed facts relating to subject matter jurisdiction.

Rhinocorps Ltd. Co. ("plaintiff"), is a small business incorporated in New Mexico. Plaintiff is suing the United States for problems stemming from an expired contract (the

"ARSS contract") that plaintiff held with the United States Air Force ("the Air Force"). 1/ See Compl. filed June 3, 2008, ¶¶ 2-3.

On May 28, 2003, plaintiff entered a contract with what is now called the 709th Armament System Squadron (the "ARSS"). The ARSS contract was awarded through a competitive small business set-aside competition. Compl. ¶ 4. The contract referenced 48 C.F.R. (FAR) § 52.219-6 (2000), which guarantees that plaintiff's ARSS contract would be awarded to a small business. Plaintiff's ARSS contract also incorporated FAR § 52.219-8, setting a goal to allow small businesses the maximum opportunity to participate in performing Federal contracts. Compl ¶¶ 6-7. With the highest rated technical proposal, and the lowest price, the award was made to plaintiff. Plaintiff agreed to a two-year contract term with three one-year option periods. The ARSS contract expired on May 29, 2008. Id. ¶ 4.

As March 29, 2008, approached, plaintiff met with the ARSS to discuss the status of the contract. Compl. ¶15. The ARSS eventually determined that plaintiff's ARSS contract would not be recompeted, but would be "fulfilled through an ongoing, current contract out of another Contracting Office." Id. ¶16. Specifically, the ARSS stated that due to reorganizations within the Air Force, among other things, the ARSS no longer needed plaintiff's services and that services provided by government personnel and existing non-small-business contractors make plaintiff's ARSS contract, as it existed, unnecessary. Id. ¶¶ 26 (b), (c). Plaintiff learned that at least one party receiving the type of work previously performed under plaintiff's ARSS contract was ITT-Advanced Engineering & Sciences ("ITT-AES"), an other-than-small-business contractor that had been engaged in a contractual relationship with the ARSS prior to plaintiff's ARSS contract. Id. ¶¶ 11, 34. Plaintiff objected to defendant's decision not to solicit a follow-on contract to the expired ARSS contract. Id. ¶ 23.

After redistribution of the requirements under the original ARSS contract, the ARSS has expressed a current need for "highly skilled, technical expertise across a broad spectrum only on an as-needed basis." Id. ¶ 26(d). To adjust for this change in requirements to be acquired from small business contractors, the ARSS conducted market research to create a new ARSS contract called the "Sources Sought Synopsis." Id. ¶ 26(e). Plaintiff was encouraged to respond to the Sources Sought Synopsis, id. ¶¶ 26 (e), (f), and plaintiff alleges that it "intends to submit a response," id. ¶ 28.

---

1/ The contract had a ceiling of over $17,000,000. It covered labor, supplies, hardware, materials, travel, and other costs associated with the Nuclear Weapons and Counterproliferation Agency. See Compl. ¶¶ 4-5.

Plaintiff predicts that the result of the new contract will be "a small business set-aside contract that will encompass some or all of the requirements of the ARSS Contract." Id. ¶ 30. However, plaintiff contends that transferring duties from the original ARSS small-business contract to a the pre-existing other-than-small business contract was an "improper transfer[] of work from a small business set-aside program to [the] contract [with ITT-AES] . . . an other-than small business." Id. ¶ 32(b).

Plaintiff alleges that the Air Force's decision not to solicit a follow-on contract for plaintiff's ARSS contract is contrary to law. Compl. ¶ 37. Plaintiff's primary contention is that diverting the duties of the ARSS contract violates of FAR §19.502-2(b), which requires contracting officers to set aside acquisitions over $100,000.00 for small business participants. Id. ¶ 37(i). Plaintiff asserts that the transfer of duties was "pretextual" and that the Air Force has failed to reveal a proper or adequate motivation for deciding not to issue a new solicitation that covers all the services and goods under plaintiff's ARSS contract. Id. ¶¶ 39(a), (b). Plaintiff filed suit in the United States Court of Federal Claims, asserting jurisdiction under 28 U.S.C. §1491(b). Id. ¶ 1.

## DISCUSSION

The United States Court of Federal Claims has jurisdiction over "an action by an *interested party* objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged *violation of statute* or regulation *in connection with a procurement or a proposed procurement*." 28 U.S.C. § 1491(b)(1) (emphasis added).

    1. Interested party

The Federal Circuit defines "interested party" in section 1491(b)(1) as "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract [by the Government]." Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (internal quotation marks and emphasis omitted) (quoting Am. Fed'n of Gov't Emp. v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (holding that "interested party" under the Tucker Act is construed in accordance with Competition in Contracting Act, 31 U.S.C. §§ 3551-3556 (2000))). This statutory definition places a two-part burden on a plaintiff to establish standing: (1) plaintiff must show that it is an actual or prospective bidder, and (2) plaintiff must show that it possesses a direct economic interest. Rex Serv. Corp., 448 F.3d at 1307 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("the party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing].")).

The Federal Circuit has prescribed the factual showing that will qualify a protestor as an interested party. A plaintiff, seeking to establish status as an actual bidder, actually must have bid or made an offer. Rex Serv. Corp., 448 F.3d at 1307. Alternatively, a plaintiff must "be *expecting* to submit an offer prior to the closing date of the solicitation." Id. at 1308 (quoting MCI Telecom. Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989) (emphasis in original and internal citations omitted)). The opportunity to establish status as an actual or prospective bidder ceases when the proposal period ends. Id.

The award of plaintiff's ARSS contract demonstrates plaintiff's direct economic interest in that ARSS contract and the duties described therein. Had there been a solicitation for the work that was relegated to the other-than-small-business entity, plaintiff would have been a bidder. In fact, plaintiff will bid on the remaining contract proposed in the form of the Sources Sought Synopsis. Because plaintiff has a direct economic interest in the subject matter of the work diverted and is a prospective bidder on any contract for the balance of the work, whether plaintiff qualifies as an interested party in connection with a procurement or a proposed procurement becomes pivotal.

    2.  In connection with a procurement or a proposed procurement.

An interested party in § 1491(b) must be "objecting to . . . any alleged *violation of statute* or regulation *in connection with a procurement or a proposed procurement*." 28 U.S.C. § 1491(b)(1) (emphasis added). Plaintiff asserts that the ARSS has violated FAR § 19.502-2(b), which designates certain awards as small-business set asides. However, FAR § 19.502-2(b) must qualify as a statute or regulation *in connection with a procurement or a proposed procurement*, under § 1491(b)(1). Case law from the Federal Circuit defines "in connection with" and "a procurement or a proposed procurement."

The phrase "in connection with" in section 1491(b)(1) was explicated in Ramcor Serv. Group, Inc. v. United States 185 F.3d 1286 (Fed. Cir. 1999). The Federal Circuit held that an allegedly violated statute is "in connection" with a procurement, or a proposed procurement, "[a]s long as [the] statute has a connection to a procurement proposal." Ramcor, 185 F.3d at 1289. This self-denominated "very sweeping" scope reaches to situations where "an agency's actions under a statute so clearly affect the award and performance of a contract" that, even when there is no contract directly at issue, the requisite "connection with a procurement" required by § 1491(b) exists. Ramcor, 185 F.3d at 1289.

The Federal Circuit opinion in Distributed Solutions, 539 F.3d at 1345, recently clarified the terms "procurement or a proposed procurement" and incorporates the holding in Ramcor. The definition of "procurement" in 41 U.S.C. § 403(2), "a subsection of the

statutory provisions related to the establishment of the office of Federal Procurement Pollicy in the Office of Management and Budget," Distributed Solutions, 539 F.3d at 1345, is identical to "procurement" as employed in section §1491(b)(1):

> § 403(2) states " 'procurement' includes all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property of services and ending with contract completion and closeout." §403(2) (emphasis added). We conclude that it is appropriate to adopt this definition to determine whether a "procurement" has occurred pursuant to §1491(b). . . . We note that §1491(b) includes both actual procurements and proposed procurements.

Id. at 1345-46. Consequently, the sweeping scope espoused in the Ramcor decision appears to embrace contemplated proposed procurements. The court's exclusion in Distributed Solutions, 539 F.3d at 1346 of "adding work to an existing contract" from the ambit of procurement actions in AT&T Commc'ns, Inc. v. Wiltel, Inc., 1 F.3d 1201 (Fed. Cir. 1993), however, deserves the parties' attention.

Further briefing is necessary to rule on whether plaintiff's complaint comes within the court's subject matter jurisdiction and whether plaintiff has correlative standing. Both parties should use Ramcor, Distributed Solutions, and AT&T Communications, as guideposts for addressing subject matter jurisdiction answering the following question: (1) whether the ARSS's actions are "in connection with a procurement" under section 1491(b). Assuming that subject matter jurisdiction is lacking over the cause of action pleaded, the parties also shall address: 2) whether transfer to the United States District Court for the District of Columbia is appropriate under 28 U.S.C. § 1631 (2000), for a claim under the Administrative Procedure Act, 5 U.S.C. § 702 (2000), that the agency decision constitutes final agency action that is arbitrary, unreasonable, or contrary to law. See Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374-75 (Fed. Cir. 2005) (adopting rule that, when subject matter is found lacking, trial court should consider propriety of transfer without request).

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

By October 28, 2008, the parties shall file simultaneous supplemental briefs, not to exceed ten pages.

s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge
