# In the United States Court of Federal Claims

No. 08-410C
(Originally Filed January 28, 2009; Withdrawn and
Reissued as Corrected May 15, 2009
*nunc pro tunc* to January 28, 2009)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * | * Pre-award bid protest; 28 U.S.C. |
| | * § 1491(b)(1) (2000); motion to |
| **RHINOCORPS LTD. CO.,** | * dismiss pursuant to RCFC |
| | * 12(b)(1); small business set- |
| Plaintiff, | * aside; jurisdiction; standing; |
| | * mootness; whether decision not |
| v. | * to issue follow-on contract as |
| | * small business set-aside violates |
| **THE UNITED STATES,** | * 48 C.F.R. (FAR) § 19.502-2(b) |
| | * (2000); motion to dismiss |
| Defendant. | * pursuant to RCFC 12(b)(6); |
| | * whether complaint states a |
| * * * * * * * * * * * * * * * * * * * * * | * cognizable challenge to reason- |
| | ableness of agency decision not |
| | to continue to procure through |
| | small business set-aside. |

Ross L. Crown, Albuquerque, NM, for plaintiff.

Courtney E. Sheehan, Washington, DC, with whom was Deputy Assistant Attorney General Gregory G. Katsas, for defendant. Christopher L. McMahon, United States Air Force Legal Operations Agency, Arlington, VA, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

    This matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, RCFC 12(b)(1), and failure to state a claim, RCFC 12(b)(6). Plaintiff seeks declaratory and injunctive relief invalidating the decision of the United States Air Force ("the Air Force") not to solicit a small business set-aside follow-on contract after the expiration of plaintiff's contract. Plaintiff labels this decision as unreasonable and in violation of applicable procurement law. Argument on the jurisdictional issue of standing is deemed unnecessary, although argument should inform the proceedings in connection with

plaintiff's challenge to the reasonableness of the agency determination required by regulation.

   1. Background

The following facts are drawn from the complaint. RhinoCorps Ltd. Co. ("plaintiff") is a small business incorporated in New Mexico. Plaintiff filed suit against the United States for problems stemming from acquisition of services that the Air Force had procured from plaintiff under an expired contract (the "ARSS contract"). 1/ See Complaint for Declaratory Judgment and Injunctive Relief filed June 3, 2008, ¶¶ 2-3.

On May 29, 2003, what is now called the 709th Armament System Squadron (the "ARSS"), an agency of the Air Force, awarded the ARSS contract for programmatic services supporting weapon systems development to plaintiff through a competitive small business set-aside. Compl. ¶ 4. The contract incorporated by reference 48 C.F.R. (FAR) § 52.219-6 (2000), setting aside acquisitions for qualifying small businesses. Also incorporated by reference was FAR 52.219-8, which implements a policy to allow qualifying small businesses the maximum opportunity to participate in performing federal contracts. FAR 19.502-2(b) applied, as well, and mandates that a contract with the value and performance characteristics of the ARSS contract would be awarded to a small business upon an agency determination that at least two responsible small businesses would be reasonably expected to submit offers. This regulation is the centerpiece of this litigation. Plaintiff, with the highest rated technical proposal and the lowest proposed price, secured award. Plaintiff agreed to a two-year contract term, with three one-year option periods. The ARSS contract expired on May 29, 2008. Compl. ¶ 4.

On January 24, 2008, the ARSS contracting officer announced through a commercial procurement tracking service, INPUT Federal Technology Opportunities, that plaintiff's ARSS contract would not be recompeted, but would be "fulfilled through an ongoing, current contract out of another Contracting Office." Id. ¶ 16 (quoted source not cited in original). On February 22, 2008, following plaintiff's submission of a Freedom of Information Act ("FOIA") request probing the Air Force's decision not to recompete the requirements covered by the ARSS contract, representatives for plaintiff and the Air Force met regarding a possible follow-on to the ARSS contract. Plaintiff alleges that the Air Force stated that "it

---

   1/ The contract had a ceiling of over $17 million. It covered labor, supplies, hardware, materials, travel, and other direct costs associated with the Nuclear Weapons and Counterproliferation Agency. See Complaint for Declaratory Judgment and Injunctive Relief filed June 3, 2008, ¶¶ 4-5.

was not unhappy with [plaintiff's] performance," but "it was not required to maintain the work that is the subject of the ARSS Contract as a small business set-aside." Id. ¶ 19. Following another FOIA request, the parties met again on March 19, 2008. Plaintiff alleges that the Air Force had a legal obligation to continue this procurement through the small business set-aside program. The Air Force disagreed, explaining that the ARSS requirements had changed. According to plaintiff, this was the first notice by the Air Force that change-of-circumstances prompted the decision not to solicit a follow-on contract. Id. ¶ 21.

By letter to Secretary of the Air Force dated March 19, 2008, Rep. Heather Wilson questioned why the ARSS contract had been moved to a large business and whether the ARSS contract could be extended to allow for an issuance of a request for proposals for a follow-on contract. Id. ¶ 25. The Air Force responded by letter dated April 17, 2008, stating that reorganizations within the Air Force, among other developments, rendered plaintiff's programmatic services no longer necessary and that support would be provided by government personnel through on-going non-small-business contractors. Id. ¶¶ 26(b), (c). Plaintiff objected to the Air Force's decision not to solicit a follow-on contract to the expired ARSS contract. Id. ¶ 23.

In its April 17, 2008 response, the Air Force attributed its need for a "highly skilled, technical expertise across a broad spectrum only on an as-needed basis" as another justification to redistribute the ARSS contract requirements. Id. ¶ 26(d). To allow small business contractors to compete, the ARSS would conduct market research by means of a "Sources Sought Synopsis" to determine whether a follow-on contract was needed. Id. ¶ 26(e). Plaintiff was encouraged to respond to the Sources Sought Synopsis, id. ¶¶ 26(e), (f), and plaintiff alleges that it "intends to submit a response," id. ¶ 28. 2/ The Sources Sought Synopsis was posted on May 6, 2008, id. ¶ 28; responses were due on June 4, 2008, id.; and plaintiff commenced this action on June 3, 2008.

Plaintiff had learned that at least one contractor receiving the redistributed work previously performed under the ARSS contract was ITT-Advanced Engineering & Sciences ("ITT-AES"), an other-than-small-business contractor that had a contract with the Air Force pre-dating the ARSS contract. Id. ¶¶ 11, 34. ITT-AES was the prime contractor for the

---

2/ Accompanying its supplemental brief, defendant submitted the Air Force's "Determination and Findings for the Unilateral Decision to use Full and Open Competition for the 709 Nuclear Systems Squadron (NSS) Counter-proliferation and Nuclear Weapon Requirement (the "D&F") (undated). Defendant offers the D&F as evidence that the matter is moot because the Air Force has complied with the requirements of FAR 19.502-2(b). Def's. Br. filed Nov. 17, 2008, at 4.

3

DTRIAC contract, a ten-year contact administered by the Defense Threat Reduction Agency (the "DTRA") during 2003. Id. ¶¶ 11-12. The DTRA is division of the Air Force. On or about December 21, 2004, the DTRA issued ITT-AES a delivery order to provide work "substantially the same as the statement of work for the ARSS Contract." Id. ¶ 13. Plaintiff "understands" that after its contract expires the Air Force will use the DTRIAC contract to order the same services that plaintiff provided. Id. ¶ 32(a).

Plaintiff contends that transferring duties from the original ARSS small business contract to the pre-existing other-than-small business contract with ITT-AES was an "improper transfer[] of work from a small business set-aside program to . . . an other-than small business." Id. ¶ 32(b). Moreover, a new contract would "encompass some or all of the requirements of the ARSS Contract." Id. ¶ 30.

Plaintiff marshals an array of charges to indict the Air Force's decision not to solicit small businesses for a follow-on contract to the ARSS contract as contrary to law. Compl. ¶ 37. Plaintiff's primary contention is that diverting the duties of the ARSS contract violates FAR 19.502-2(b), which requires contracting officers to set aside acquisitions over $100,000.00 for small business participants upon a determination that a reasonable expectation exists that at least two responsible small business concerns will submit offers. Id. ¶ 37(i). Plaintiff asserts that the transfer of duties was "pretextual" and that the Air Force lacked legitimate motivation for determining not to issue a new solicitation identical to the expired ARSS contract. Id. ¶¶ 39(a),(b). Plaintiff levels the charge that the Air Force did not announce that the ARSS requirements had changed until after plaintiff confronted the Air Force with the "legal authority concerning its obligation to maintain the small business set-aside program represented by the ARSS Contract." Id. ¶ 39(a). On June 3, 2008, plaintiff filed suit in the United States Court of Federal Claims for declaratory and injunctive relief, with jurisdiction predicated on 28 U.S.C. §1491(b) (2000), "reversing" the Air Force's decision not to solicit a follow-on contract and not to extend plaintiff's contract until the decision required by law had been made. Id. ¶¶ 1, 42.

In a comprehensive speaking order entered on July 28, 2008, Senior Judge Hodges denied temporary and preliminary injunctive relief because it appeared that plaintiff lacked standing to contest a procurement decision when the Air Force had not issued a solicitation for proposals. See RhinoCorps Co. v. United States, No. 08-410C (Fed. Cl. July 28, 2008) (order denying motion for temporary restraining order and preliminary injunction).

As of August 27, 2008, briefing on defendant's dispositive motion was completed. This case was transferred to the undersigned pursuant to RCFC 40.1(b) on September 19, 2008. An order entered on October 10, 2008, required supplemental briefing to address defendant's first ground to dismiss – subject matter jurisdiction – because the United States

Court of Appeals for the Federal Circuit on August 28, 2008, just issued <u>Distributed Solutions, Inc. v. United States</u>, 539 F.3d 1340 (Fed. Cir. 2008), a decision that defined, for the first time, the stages of the procurement process that are eligible for a protest.

**DISCUSSION**

I.  <u>Jurisdiction</u>

The United States Court of Federal Claims derives jurisdiction over bid protests from the Tucker Act, 28 U.S.C. § 1491(b)(1), <u>amended</u> <u>by</u> the Administrative Disputes Resolution Act of 1996, Pub. L. No. 104-320, § 12(a), 110 Stat. 3870, 3874-75 (codified at 28 U.S.C. § 1491(b)) (the "ADRA").  Specifically, the Court of Federal Claims has jurisdiction over actions by an "interested party" objecting to: (1) a solicitation by a federal agency for bids or proposals for a proposed contract; (2) a proposed award or the award of a contract; or (3) any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement.  28 U.S.C. § 1491(b)(1).  <u>Banknote Corp. of Am., Inc. v. United States</u>, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  The court may "award any relief that the court considers proper, including declaratory and injunctive relief."  28 U.S.C. § 1491(b)(2).

II.  <u>Standing</u>

Every plaintiff must have standing to invoke the court's jurisdiction over a bid protest.  <u>Sicom Sys., Ltd. v. Agilent Tech., Inc.</u>, 427 F.3d 971, 975 (Fed. Cir. 2005). 28 U.S.C. § 1491(b)(1) provides, in pertinent part:  "[T]he United States Court of Federal Claims . . . shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals . . . ."  The pivotal element of standing in a bid protest is whether a protester qualifies as an "interested party" under § 1491(b)(1).  <u>See</u> <u>Am. Fed'n of Gov't Emp. v. United States</u>, 258 F.3d 1294, 1302 (Fed. Cir. 2001) ("<u>AFGE</u>") (holding that "interested party" under Tucker Act is construed in accordance with Competition in Contracting Act, 31 U.S.C. § 3551(2) (2000)).

    1.  <u>Interested party</u>

The Federal Circuit defines "interested party" in § 1491(b)(1) as "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract [by the Government]."  <u>Rex Serv. Corp. v. United States</u>, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (internal quotation marks and emphasis omitted) (quoting <u>AFGE</u>, 258 F.3d at 1302).  This statutory definition imposes a two-part burden to establish standing:  (1) plaintiff must show that it is an actual or prospective bidder, and (2) plaintiff must show that it possesses a direct economic interest.

Rex Serv. Corp., 448 F.3d at 1307 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("the party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing].")).

The Federal Circuit has prescribed the factual showing that will qualify a protestor as an interested party. A plaintiff seeking to establish standing as an actual bidder must have bid or made an offer. Rex Serv. Corp., 448 F.3d at 1307. Alternatively, a plaintiff must "be *expecting* to submit an offer prior to the closing date of the solicitation." Id. at 1308 (quoting MCI Telecom. Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989) (internal citations omitted)). The opportunity to establish standing as an actual or prospective bidder ceases when the proposal period ends. Id.

Plaintiff's ARSS contract (the similarity of the programmatic services provided thereunder to the prospective solicitation) demonstrates plaintiff's direct economic interest in the subject matter of a small business set-aside covering such programmatic services. See Compl. ¶ 35 (alleging that plaintiff intends to submit a proposal for any follow-on contract). Because plaintiff has a direct economic interest in competing for the solicitation for the recompeted follow-on contract, whether plaintiff qualifies as an interested party in connection with a procurement or a proposed procurement is the paramount jurisdictional inquiry.

2. In connection with a procurement or a proposed procurement

An interested party must be "objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (emphasis added).

Plaintiff asserts that the Air Force violated FAR 19.502-2(b), by not resoliciting the ARSS contract. FAR 19.502-2(b) designates certain awards as small business set-asides and conditions award of a contract as a small business set-aside on a finding that the potential for set-aside is present:

> The contracting officer shall set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns offering the products of different small business concerns . . . and (2) award will be made at fair market prices. Total small business set-asides shall not be made unless such a reasonable expectation exists . . . .

(Emphasis added.)

FAR 19.502-2(b) must qualify as a statute or regulation "in connection with a procurement or a proposed procurement," under § 1491(b)(1). Case law from the Federal Circuit defines both "in connection with" and "a procurement or a proposed procurement."

The phrase "in connection with," as it appears in § 1491(b)(1), was explicated in RAMCOR Serv. Group, Inc. v. United States, 185 F.3d 1286 (Fed. Cir. 1999). The Federal Circuit held that a statute is "in connection" with a procurement, or a proposed procurement, "[a]s long as [the] statute has a connection to a procurement proposal." RAMCOR, 185 F.3d at 1289. This self-denominated "very sweeping" scope reaches to situations where "an agency's actions under a statute so clearly affect the award and performance of a contract" that, even when there is no contract directly at issue, the requisite "connection with a procurement" required by § 1491(b) is present. 185 F.3d at 1289.

The Federal Circuit's recent opinion in Distributed Solutions, 539 F.3d at 1345, defined the terms "procurement or a proposed procurement." The court adopted the definition of "procurement" in 41 U.S.C. § 403(2) (2000), "a subsection of the statutory provisions related to the establishment of the Office of Federal Procurement Policy in the Office of Management and Budget," Distributed Solutions, 539 F.3d at 1345, which "give overall direction for federal procurement policies, regulations, procedures, and forms," id. (citations omitted):

> § 403(2) states "'procurement' includes all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property of services and ending with contract completion and closeout." §403(2) (emphasis added). We conclude that it is appropriate to adopt this definition to determine whether a "procurement" has occurred pursuant to §1491(b). . . . We note that §1491(b) includes both actual procurements and proposed procurements.

Id. at 1345-46 (citations omitted). Consequently, the sweeping scope of "in connection with" by definition invokes a connection with "the process for determining a need" for an acquisition. Id. at 1346. The Federal Circuit pointedly excluded "adding work to an existing contract" from the ambit of procurement actions. Id. (citing AT&T Commc'ns, Inc. v. Wiltel, Inc., 1 F.3d 1201 (Fed. Cir. 1993)).

This court's order of October 10, 2008, directed the parties to RAMCOR, Distributed Solutions, and AT&T Communications, as guideposts for addressing subject matter jurisdiction in order to answer the following questions: (1) whether the Air Force's actions relating to the ARSS contract are "in connection with a procurement" under § 1491(b); and

(2) assuming that subject matter jurisdiction is lacking over the cause of action pleaded, whether transfer to the United States District Court for the District of Columbia is appropriate under 28 U.S.C. § 1631 (2000), for a claim under the Administrative Procedure Act, 5 U.S.C. § 702 (2000), asserting that the agency decision constitutes final agency action that is arbitrary, unreasonable, or contrary to law. See RhinoCorps Co. v. United States, No. 08-410C (Fed. Cl. Oct. 10, 2008) (order requiring supplemental briefing) (citing Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374-75 (Fed. Cir. 2005) (adopting rule that, when subject matter is found lacking, trial court should consider propriety of transfer without request)).

### 3. The parties' arguments

Defendant advances the position that, "[e]ven under the most sweeping concept of 'in connection with a procurement,'" plaintiff has not established that its complaint falls within the subject matter jurisdiction of the court. Def's Br. filed Nov. 17, 2008, at 2. As defendant sees it, the Air Force decided not extend plaintiff's contract after the ARSS contract was completed. This ends this procurement process and, hence, the lynchpin for standing, according to the Federal Circuit. Id. at 2 (citing Distributed Solutions, 539 F.3d at 1345) (stating that "'procurement' includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout") (emphasis omitted)).

Defendant disagrees that the Air Force's reliance upon the DTRIAC contract constitutes a "procurement." As the Federal Circuit explained in AT&T Communications and again in Distributed Solutions, "'adding work to an existing contract that is clearly within the scope of the contract does not raise a viable protest under § 1491(b)(1).'" Def's Br. filed Nov. 17, 2008, at 2 (quoting Distributed Solutions, 539 F.3d at 1346). Defendant maintains that work assigned to ITT-AES comes within the scope of the existing DTRIAC contract. Defendant adds that plaintiff has not alleged facts that demonstrate that the Air Force modified the DTRIAC contract to the extent it "materially depart[ed] from the scope of the original procurement," which would violate the Competition in Contracting Act, 41 U.S.C. § 253 (2000). Def's Br. filed Nov. 17, 2008, at 3 (citing AT&T Commc'n, 1 F.3d at 1205).

According to defendant, plaintiff's protest is grounded on a task order issued under the DTRIAC contract. Citing IDEA Int'l, Inc. v. United States, 74 Fed. Cl. 129 (Fed. Cl. 2006), defendant clarifies that "[a] protest is not authorized in connection with the issuance of a task order or delivery order except for a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued." Def's Br. filed Nov. 17, 2008, at 3 (quoting IDEA Int'l, Inc., 74 Fed. Cl. at 135) (granting in part and denying in part parties' cross-motions for judgment on administrative record to extent

award was partially defective, although award was not vacated, and bidder was entitled to recover its proposal preparation costs). Defendant insists that allowing plaintiff to challenge any task order issued to ITT-AES under its existing contract would "frustrate the intent of Congress." Id. at 3-4 (quoting A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 134 (Fed. Cl. 2006)).

With its supplemental brief, defendant submitted the contracting officer's "Determination and Findings for the Unilateral Decision to use Full and Open Competition for the 709 Nuclear Systems Squadron (NSS) Counter-proliferation and Nuclear Weapon Requirement" (the "D&F") (undated). The D&F concludes that no reasonable expectation exists that offers would be obtained from at least two responsible businesses capable of satisfying the requirements of the contract contemplated by the Sources Sought Synopsis. Def's Br. filed Nov. 17, 2008, Ex. A at 3 ¶ 10. Defendant contends that the D&F proves the Air Force's full compliance with FAR 19.502-2(b). Therefore, even assuming, arguendo, that plaintiff has standing, plaintiff's complaint has been rendered moot, thus negating jurisdiction. Id. at 4 n.6, 5 (citing Myers Inv. and Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002)).

Plaintiff's supplemental brief argues that RAMCOR's "expansive view of §1491(b)(1)" and Distributed Solutions' even broader interpretation of the Court of Federal Claims' bid protest jurisdiction, Pl.'s Br. filed Nov. 17, 2008, at 3-4, place plaintiff's protest well within the court's jurisdictional purview. Plaintiff cites several Air Force actions as evidence that the Air Force violated FAR 19.502-2(b): (1) the Air Force improperly diverted work from a small business set-aside under the ARSS contract to an other-than-small-business contractor on the DTRIAC contract; (2) the Air Force determined that a small business did not have the ability to continue the work before soliciting a follow-on contract to ARSS; and (3) the Air Force decided not to extend the ARSS contract until it awarded a follow-on contract or decided that one could not be satisfactorily performed by a small business set-aside. Id. at 5.

Plaintiff characterizes its objection to the transfer of work from the ARSS contract to the DTRIAC contract as "a challenge to the underlying solicitation for the DTRIAC contract." Pl.'s Br. filed Nov. 17, 2008, at 6. Plaintiff's "protest does not seek to challenge merely the addition of work to an existing contract but rather the improper diversion of work from a small business set-aside program." Id. The work previously performed by the ARSS contract and added to the DTRIAC contract, plaintiff argues, does not constitute work added within the scope of the existing DTRIAC contract. Id. at 7.

Plaintiff cites to the Government Accountability Office's (the "GAO") decision in LBM, Inc., No. B-290682, CPD ¶ 157 (Sept. 18, 2002). LBM, a small business concern,

protested the Air Force's efforts to acquire transportation motor pool services as a follow-on requirement to a Logistical Joint Administration Management Support Services ("LOGJAMSS") contract, which was a multiple-award, indefinite-delivery, indefinite-quantity ("ID/IQ") task-order contract. Id. at 2. The protestor argued that these services – previously performed exclusively by small businesses for over ten years – should continue to be small business set-asides: "[T]he Army improperly failed to coordinate with the SBA in deciding to withdraw these services from exclusive small business participation and instead to transfer the services to the" large ID/IQ contract. Id. at 3. The GAO construed plaintiff's protest as "a challenge to the terms underlying LOGJAMSS solicitation," not the proposed issuance of a task order for these services, and therefore within the GAO's bid protest jurisdiction. Id. at 4.

Plaintiff submits that "LBM makes it clear that a protest objecting to the diversion of work from a small business set-aside program to a contract being performed by an other-than-small[-business] contractor is a challenge to the terms of the underlying solicitation of the large contract and thus within [this court's] bid protest jurisdiction." Pl.'s Br. filed Aug. 6, 2008, at 5. Plaintiff sees three aspects to this protest: the diversion of work from ARSS to DTRIAC; the Air Force's decision not to solicit a follow-on ARSS contract before inquiring whether a small business had the ability to satisfy ARSS requirements; and the timing of the analysis required by FAR 19.502-2(b). Id. at 7-8. In sum, plaintiff contends that the Air Force cannot "abandon a small business set-aside program without first complying with FAR 19.502-2(b)." Id. at 8.

Plaintiff cites the D&F itself as deficient in two respects: first, the D&F does not establish that the Air Force properly diverted work from a small business set-aside program to an other-than-small business contractor. Pl.'s Br. filed Dec. 5, 2008, at 3-4. Second, plaintiff disputes the factual basis for the D&F's finding "that there is not a reasonable expectation that offers will be obtained from at least two responsible small businesses capable of satisfying" the Air Force's stated requirements. Id. at 5.

According to plaintiff, the D&F appears "formulated to justify the Air Force's desire to have requirements of the NSS performed by large businesses." Pl.'s Br. filed Dec. 5, 2008, at 5. Sufficient facts are before the court to "establish that the Determination and Findings is a rationalization assembled with the objective of supporting the Air Force's prior course of conduct." Id. at 6. Plaintiff labels the contracting officer's rationalization that the Air Force decided not to solicit a small business follow-on contract because its requirements changed "a pretext and a *post hoc* rationalization." Id. at 5.

### 4. The jurisdictional imbroglio unraveled

The Federal Circuit's definition of procurement in Distributed Solutions does not contemplate an on-going monitoring of contract performance. The alleged diversion of work from one contract vehicle to another lacks any nexus to a contemplated procurement. However, the essence of plaintiff's complaint, and the pertinence of the GAO's analysis in LBM, is that FAR 19.502-2(b), indisputably a procurement regulation, is implicated because it requires a D&F (or like record of finding) before an agency abandons a small business set-aside and declines to solicit a follow-on contract. The regulation requires the contracting officer to issue the D&F to memorialize that a small business set-aside does not meet its needs before the Air Force initiates a new solicitation that is not a small business set-aside.

The timing of the D&F is one factor in plaintiff's arsenal of arguments that the decision itself is not reasonable. Defendant does not dispute plaintiff's allegations that the work performed previously by plaintiff now is being performed by ITT-AES. As defendant concedes, the Air Force issued a Sources Sought Synopsis and "planned to conduct[] market research to determine how to best meet its future contracting needs, and to what extent small businesses may be able to fill those needs." Def.'s Br. filed June 20, 2008 at 3; see also Distributed Solutions, 539 F.3d at 1346 (finding that market research conducted by Government can be beginning of, and in connection with, procurement process).

Defendant invokes the Federal Circuit's holding in AT&T, 1 F.3d 1201, to preclude plaintiff's bid protest. The Federal Circuit in AT&T considered the court's bid protest jurisdiction in the context of a modification to an existing contract. AT&T, the primary contractor for telecommunication services submitted a modification proposal under its existing contract to upgrade the current transmission service of T1 to T3 circuits because T3 lines transmit data 28 times faster than T1 lines. The General Services Administrative (the "GSA") determined that this improvement was within the scope of services and entered a bilateral modification with AT&T incorporating this enhancement. Wiltel, Inc., and MCI Telecommunications protested the modification as exceeding the scope of AT&T's original contract to the General Services Administrative Board of Contract Appeals (the "Board"), and the Board granted the bid protest. AT&T and the GSA appealed the Board's decision.

The Federal Circuit determined that the Competition in Contracting Act does not require a bid for every change or modification made to an existing contract; only changes made outside the scope of the original competed contract trigger the statutory competition requirement. AT&T, 1 F.3d at 1205. Therefore, the court examined whether "the contract as modified materially depart[ed] from the scope of the original procurement." Id.

The Federal Circuit reversed the Board's decision to sustain the protest, observing that the Board placed too much emphasis on the differences between T1 and T3 technologies, rather than focusing on "the modification in the context of the contract as a whole." Id. at 1207. The Federal Circuit also stated that a solicitation should adequately advise offerors of any potential types of changes or modifications that would likely occur during contract performance. Id. Accordingly, "in determining the scope of the original competition," the Board erred by not properly evaluating the reasonable expectations of the bidders during original bidding. Id.

AT&T stands for the proposition that, to sustain a bid protest stemming from a change or modification to a contract, the protestor must allege facts that establish that the modification falls outside the scope of the original contract, thereby triggering the statutory competition requirement. If any change made to a procurement is within the scope of work originally contemplated, no competition is required, and jurisdiction is not present.

Defendant maintains that plaintiff has not alleged facts demonstrating that the Air Force modified the DTRIAC contract so that it materially departed from the scope of the original procurement. However, plaintiff does not anchor jurisdiction on the allegation that the work added to the DTRIAC contract materially departed from the scope of the original procurement. In fact, plaintiff posits that the "statement of work [for DTRIAC Contract, Delivery Order No. 00220024] is substantially the same as the statement of work for the ARSS Contract." Compl. ¶ 13. Plaintiff also characterizes the ARSS contract has having a "broad" statement of work. Id. ¶ 6. Although AT&T does not foreclose jurisdiction in the case at bar, the decision does not recognize plaintiff's claim regarding diversion of work from the ARSS contract or for failure to award a small business set-aside follow-on contract.

In a similar vein, the GAO's decision in LBM does not contemplate the claim that plaintiff lodges concerning diversion of work from an on-going contract. Rather, the GAO expressly recognized the distinction between issuance of a task order for services covered by a small business set-aside contract and a decision of the procuring agency not to continue to set aside those services for small businesses. The Court of Federal Claims' bid protest jurisdiction does not extend to an allegation that work within the scope of a protestor's non-requirements contract has been diverted. See Distributed Solutions, 539 F.3d at 1346. That cause of action is called a breach. The definitions of "in connection with" and "procurement" do not give a contractor access to injunctive relief for disputes involving on-going contract performance. Therefore, the court lacks jurisdiction to consider plaintiff's claim for diversion of work to the DTRIAC contract.

While jurisdiction is not present to examine as a bid protest how the Air Force managed the ARSS contract, the determination that a small business cannot satisfy the Air

Force's requirements, as explicated in its D&F, does not foreclose as moot plaintiff's challenge to the reasonableness of the D&F. The parties disagree about the legal consequences of the facts, but the facts themselves are undisputed. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (unless defendant's motion to dismiss for lack of jurisdiction challenges truth of jurisdictional facts alleged, court assumes facts in complaint as true and correct). Once the D&F issued during this litigation, plaintiff assailed its reasonableness, and the complaint is deemed amended to include the arguments contained in plaintiff's December 5, 2008 supplemental brief. See Declaration of Anthony L. Contri, Dec. 5, 2008, *passim*. Because the FAR contemplates issuance of a valid D&F before the Air Force can abandon a prior small business set-aside covering the same programmatic services, the issuance of the D&F itself does not moot plaintiff's challenge. 3/

III. Motion to dismiss for failure to state a claim

   1. Standard of review

To obtain permanent injunctive relief, a protester must prove either that the agency acted arbitrarily or capriciously or that it prejudicially violated an applicable procurement regulation. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) ("Domenico Garufi") (discussing cases based on Scanwell Labs. Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970)).

The ADRA's standard of review for agency procurement decisions mirrors the standard of review set forth in the Administrative Procedure Act, 5 U.S.C. § 706 (2000) (the "APA"). See 28 U.S.C. § 1491(b)(4); Banknote Corp., 365 F.3d at 1350. The APA gives

---

3/ A transfer of this case to the United States District Court for the District of Columbia is inappropriate because plaintiff has established subject matter jurisdiction in the Court of Federal Claims. 28 U.S.C. § 1631 (if court finds that it is without jurisdiction, it can transfer case to any court in which action could have been brought at time case was filed or noticed).

Plaintiff's complaint alleges violation of a procurement regulation in connection with a proposed procurement. Cf. Blue & Gold Fleet, L.P. v. United States, 492 F.2d 1308 (Fed. Cir. 2007) (holding that offeror that has opportunity to object to defective government solicitation must object to solicitation terms before bidding concludes). Had plaintiff waited until a new solicitation issued, the Government could argue that plaintiff's disagreement with the timing of the D&F was foreclosed. The court does not sustain jurisdiction based on plaintiff's objection to the timing of the D&F.

the court discretion to set aside only an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see PGBA LLC v. United States, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004) (clarifying that ADRA incorporates arbitrary and capricious standard of APA to review procurement decisions, but did not change court's discretion in granting remedy of injunctive relief); see also Domenico Garufi, 238 F.3d at 1332-33. However, establishing that an agency violated the APA standard of review does not entitle a protestor to relief; the error must also be prejudicial. 4/ Galen Med. Assoc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (clarifying that, in addition to significant error in procurement process, plaintiff must show that error was prejudicial (citing Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996)).

Accordingly, the Federal Circuit applies a two-step analysis for bid protests: first, the court must determine whether the Government acted without a rational basis (whether the action was arbitrary or capricious), see Domenico Garufi, 238 F.3d at 1332; or whether the Government acted contrary to law (whether the Government action constituted a prejudicial violation of an applicable procurement regulation). In either case a plaintiff bears the heavy burden of proving a lack of rational basis or a violation of the law. Id. at 1333. Second, if the government action lacked a rational basis, a factual inquiry must be conducted to determine whether the protester was prejudiced by the conduct. See Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).

Agency action is arbitrary or capricious when it does not have a rational basis for its decision. A rational basis requires "the contracting agency [to] provide[] a coherent and

---

4/ The Federal Circuit has held that "the question of prejudice goes directly to the question of standing . . . [and that] 'prejudice is a necessary element of standing.'" Info. Tech. & App. Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (quoting Myers, 275 F.3d at 1370). Although the prejudice requirement for standing has been satisfied by a nominal showing that a protester "could compete for the contract," Myers, 275 F.3d at 1370, the prejudice requirement required for success on the merits consistently has been more stringent. See Galen Med. Assoc. v. United States, 369 F.3d 1324, 1330-31 (Fed. Cir. 2004) (denying existence of prejudice when proposal did not have requisite facilities required by solicitation); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1563 (Fed. Cir. 1996) (prejudice not found when, despite pricing error, protestor's prices remained substantially higher). In essence, these are incongruent, although slightly overlapping, standards. See generally Textron, Inc. v. United States, 74 Fed. Cl. 277, 284-85 & n.3, 329-30 (2006) (summarizing Federal Circuit caselaw); cf. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (holding that both standards can be satisfied with same demonstration of "substantial chance" of receiving award but for alleged error).

reasonable explanation of its exercise of discretion." Domenico Garufi, 238 F.3d at 1333 (internal quotation marks omitted). The court's role in a bid protest, including ascertaining the existence of a rational basis, is not to substitute judgment for the agency; indeed, the agency generally is accorded wide discretion in evaluating bids, and the court should not substitute its judgment for that of the agency. Grumman Data Sys. Corp. v. Widnall, 15 F.3d 1044, 1046 (Fed. Cir. 1994); see also Camp v. Pitts, 411 U.S. 138, 142-43 (1973) (stating that courts should review facts to determine if agency's decision is supported by rational basis).

2. Burden of proof

The court's task in considering a motion to dismiss for failure to state a claim is to determine "'whether the claimant is entitled to offer evidence to support the claims.'" Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S. Ct. 1955 (2007), the United States Supreme Court clarified the standard enunciated in Conley v. Gibson, 355 U.S. 41 (1957), with respect to what a plaintiff must plead to survive a Rule 12(b)(6) motion. 5/ The Supreme Court circumscribed the standard, stating: "[A]ny statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings." Twombly Corp., 127 S. Ct. at 1968; see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356 n.4 (Fed. Cir. 2007) (Dyk, J., dissenting). Accordingly, the court must assess whether plaintiff adequately states a claim and whether plaintiff can allege any facts that, if proven, would entitle it to the relief sought. See Twombly, 127 S. Ct. at 1968-69; McZeal, 501 F.3d at 1361-62; see also May v. United States, 80 Fed. Cl. 442 (stating that factual allegations in plaintiff's complaint did not rise to level of cognizable claim against Government), aff'd, 293 Fed. Appx. 775 (Fed. Cir. 2008) (per curiam).

Although plaintiff's factual allegations need not be "detailed," they "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (internal

---

5/ The Conley standard, abrogated by Twombly, stated "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. Twombly retired the literal interpretation of Conley's "no set of facts" language "as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S. Ct. at 1969.

citation omitted). The court thus "'accept[s] as true all factual allegations in the complaint, and . . . indulge[s] all reasonable inferences in favor of the non-movant'" to evaluate whether plaintiffs have stated a claim upon which relief can be granted. Chapman Law Firm, 490 F.3d at 938 (omission in original) (quoting Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001)).

Rule 12(b)(6) authorizes the defendant to move, before filing a responsive pleading, for dismissal of the complaint. A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail and thus to spare litigants the burdens of unnecessary pretrial and trial activity. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).

"This case presents the antecedent question of what [] plaintiff must plead in order to state a" legally cognizable bid protest. See Twombly, 127 S. Ct. at 1964. RCFC 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a 12(b)(6) motion, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965.

Plaintiff alleges that the Air Force acted contrary to law by assigning the work plaintiff previously performed under the ARSS contract to an other-than-small business without first performing the analysis set forth in FAR 19.502-2(b). Defendant retorts that FAR 19.502-2(b) does not obligate the Air Force to perform a small business analysis before allowing plaintiff's contract to expire.

The court does not read the complaint to plead a cause of action based only on the timing of the required FAR 19.502-2(b). Rather, plaintiff contends that the D&F does not comply with the FAR. See MCS Mgmt., Inc. v. United States, 48 Fed. Cl. 506, 511 (2001) (stating that contracting officer must undertake reasonable efforts to determine whether it is likely that offers will be received from at least two responsible small businesses); McSwain & Assoc., Inc; Shel-Ken Properties, Inc.; Elaine Dunn Reality, Comp. Gen. B-271071 (May 20, 1996) (finding that agency required to make reasonable efforts to determine whether two small businesses are capable of performing contract).

On the other hand, defendant also maintains that the Air Force's D&F recently completed its analysis of responses to the Sources Sought Synopsis, thus satisfying any obligation under FAR 19.502-2(b) and rendering plaintiff's claim moot. Defendant insists that the Air Force has made the determination required by regulation that it will not award any follow-on contract to a small business set-aside, because no reasonable expectation is present that it would receive offers from at least two responsible small businesses.

Plaintiff disputes the factual bases for the Air Force's conclusion. See Contri Decl. *passim*. Plaintiff advances the position that this report is submitted in an attempt to cover up the fact that the Air Force either failed to initiate timely a small business follow-on process or determined that ITT-AES could perform the services cheaper than a small business. See supra note 3. Plaintiff maintains that it has presented sufficient facts to show the D&F "is a rationalization assembled with the objective of supporting the Air Force's prior course of conduct." Pl.'s Br. filed Dec. 5, 2008, at 6.

Accepting as true the allegations of the complaint, and plaintiff's supplemental allegations elicited by the D&F for purpose defendant's RCFC 12(b)(6) motion, plaintiff has pleaded sufficient facts that rise above a speculative level to establish that the Air Force's D&F, in fulfillment of FAR 19.502-2(b), was unreasonable. See McSwain & Assoc., Comp. Gen. B-271071, at 2 ("[W]e regard such a determination as a matter of business judgment within the contracting officer's discretion which we will not disturb absent a showing that it was unreasonable.") (citations omitted). Moreover, plaintiff adequately has presented facts that it was prejudiced by the Air Force's action because the D&F precludes plaintiff from the opportunity of bidding on any contract for the services that it formerly provided.

The court is mindful that this complaint was filed in June 2008. A bid protest should not metastasize into a protracted litigation. The nature of judicial inquiry should be precise, limited, and expeditious. This case has been delayed because briefing was completed one day before a crucial appellate decision issued. Thereafter, it was extended further when the D&F issued during the supplemental briefing. The court urges the parties to agree on a framework conducive to prompt resolution of the case on the merits.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss for lack of subject matter jurisdiction is granted with respect to plaintiff's claim for diversion of work from the ARSS contract and otherwise is denied. Defendant's motion to dismiss for failure to state a claim for relief is granted with respect to plaintiff's claim regarding the timing of the D&F, although the timing may bear on the reasonableness of the D&F, and otherwise is denied. Accordingly,

**IT IS ORDERED**, as follows:

A status conference shall be held at 3:00 p.m. on Tuesday, February 10, 2009, in the Howard T. Markey National Courts Building. Counsel for plaintiff shall notify the court at 202/357-6620 by February 3, 2009, if he wishes to participate by telephone conference call

to be placed by the court.  The parties shall be prepared to schedule further proceedings that will allow for this protest to be resolved fully by June 2009.

s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge